HAYDEN CLEMENT AND WACHOVIA BANK AND TRUST COMPANY, ADMINISTRATORS, C. T. A., D. B. N., OF MRS. FRANCES KELLY FRERCKS, v. MRS. HOPE S. WHISNANT, MRS. ROBERT CRAWFORD, ET AL.

(Filed 10 April, 1935.)

**Wills E f—Construction of will as to priority of payment of legacies upon deficiency of estate to pay all legacies in full.**

Testatrix bequeathed certain designated amounts of money to certain relatives and friends, then a certain sum to her church for the erection of a parish house and Memorial Pipe Organ, and a certain sum to a church school for boys, and then various designated amounts to various charitable and religious organizations. The will provided that in case of a deficit the "deficit" should be "divided pro rata among the bequests to church and charity, . . . excepting the bequests to" her church for the pipe organ and parish house and the bequest to the boys school. There was a shrinkage in value of assets of the estate and costs of administration amounting to $10,000, and the executor misappropriated $40,000, with the result that the estate was insufficient to pay all bequests in full. *Held:* The legacies to relatives and friends should be first paid, then the legacies for the pipe organ and parish house and the boys school, and third, all other legacies to church and charity, and if the funds are insufficient to pay in full all legacies of any class when reached, the legatees of that class should share pro rata, the term "deficit" used in the will being sufficiently broad to cover a deficiency from any source, including defalcation, and there being nothing to show that the construction of the parish house or the installation of the organ had been undertaken, the legacies for these purposes impose no contractual obligation upon the estate, and were not such debts of piety as to impress a priority of payment.

CLARKSON, J., took no part in the consideration or decision of this case.

CIVIL ACTION, before *Harding, J.,* at May Term, 1934, of ROWAN.

Mrs. Frances Kelly Frercks died in May, 1931, leaving a last will and testament, in which J. M. McCorkle was duly named as executor. The executor was required to give bond. At the time of the death of testatrix and the qualification of the executor, the value of the estate was $106,185.29. The will, in items 2 and 3 thereof, designated legacies in

various amounts to various relatives, aggregating approximately $41,000. After specifying said legacies to relatives, the will declares: "If either or any of the foregoing relatives undertake to contest this will they shall forfeit all rights under this will. If there be any other relatives not named in this will, their names are omitted purposely." The will then proceeds to designate certain legacies for certain friends of testatrix, some of them living in Germany. The total amount of such legacies to friends was $6,300. The will then proceeds to designate and specify certain legacies for church and charity. The legacies for church and charity aggregate $54,000.

The legacies specified for St. Luke's Church for Memorial Pipe Organ and the erection of a new parish house are $17,000, and the legacy specified for Patterson School for Boys is $7,000, making a total of $24,000 for St. Luke's Vestry and the Patterson School.

Capitulating the facts, the situation is this: Legacies for relatives and friends, first set up in the will, aggregate approximately $47,000. Legacies for St. Luke's Vestry and Patterson School, $24,000; legacies for general church and charity purposes, $30,000; total legacies specified in the will, $101,750.

The executor defaulted and misappropriated approximately $40,000. He was removed, and on 26 September, 1933, the plaintiffs were appointed administrators, *d. b. n., c. t. a.,* to administer the estate. At the time the plaintiffs qualified they received from the clerk of the Superior Court of Rowan County the sum of $69,677.78, representing the gross assets of the estate then available to pay legacies specified in the will. It appeared that this sum so available included the value of certain worthless stocks, and that certain costs of administration and of a caveat proceeding were unpaid. This shrinkage of assets plus such unpaid costs amounted to $10,000.

Thereupon plaintiffs brought the present suit against the legatees and other parties named in the will for a construction of the will and for the advice of the court in the distribution of the estate.

From judgment rendered, the relatives and St. Luke's Episcopal Church appealed to the Supreme Court.

*Pharr & Bell for personal legatees.*
*Charles Price and Lee Overman Gregory for St. Luke's Vestry.*
*Taliaferro & Clarkson and James O. Moore for Protestant Episcopal Diocese of North Carolina.*
*Hamilton C. Jones for Thompson Orphanage.*

BROGDEN, J. The testatrix in her will gave to relatives and friends legacies aggregating approximately $47,000. She then gave to the

Vestry of St. Luke's Episcopal Church, of which she was a member, $17,000 for a new parish house and a Memorial Pipe Organ. She also gave to the Patterson School for Boys $7,000. She gave substantial legacies to the Protestant Episcopal Diocese, the Thompson Orphanage, the Rowan County Welfare Department, and Valle Crucis School for Girls, aggregating $30,000. Shrinkage of value of assets and the costs of administration aggregated $10,000. The executor misappropriated $40,000. The result is that there is now approximately $59,000 in hand or available to pay $101,000 of legacies and bequests.

After specifying all the legacies and bequests, and in the latter part of the will, immediately before that portion appointing an executor, the testatrix used the following language: "If after paying off and discharging all of the bequests and legacies, and paying all the costs of executing this my will, there should be a deficit, I direct my executor and trustee to divide said deficit pro rata among the several bequests I have made to church and charity, and deduct the same from these; excepting, however, from said deductions the bequests to St. Luke's Church for a Memorial Pipe Organ, the bequests toward the erection of a new parish house and the memorial bequest to the Patterson School for Boys at Legerwood, N. C."

The interpretation of the foregoing clause is the determinative question of law in the case. Three theories have been advanced by the parties. First, the theory advanced by the personal legatees and friends of the deceased is that the testatrix intended to insert in the above-quoted clause from the will, in line one and before the word "bequests," the word "personal." These parties further assert that the controverted clause of the will creates three classes of beneficiaries and establishes a priority of payment as follows: (a) Relatives and friends; (b) St. Luke's Vestry for the pipe organ and parish house and Patterson School for Boys; (c) all other church and charity bequests, including the Thompson Orphanage, the diocese, county welfare, etc.

That is to say, that in the event there was not enough money to pay the bequests and legacies, then the relatives and friends should be paid in full, and thereafter St. Luke's Vestry and Patterson School for Boys should be paid in full, and the balance, if any, distributed pro rata among all bequests to other general, church, and charity activities specified in the will.

The second theory is that advanced by the Vestry of St. Luke's Episcopal Church, which contends that, as the testatrix gave to the Vestry of St. Luke's Church the sum of $10,000, for the erection of a Memorial Pipe Organ . . . "in memory of Peter A. Frercks and family," this bequest constituted a contractual obligation imposed upon the estate, and as these were debts of piety and reverence, they took precedence

over all other bequests and legacies, and therefore should have priority of payment. The same reasoning was applied to the bequest of $7,000 to the Vestry of St. Luke's Episcopal Church "toward the erection of a new parish house. This gift shall be known as the Peter A. Frercks and family memorial gift."

The third theory is that advanced by the beneficiaries of general church and charity bequests, particularly the Protestant Episcopal Diocese and the Thompson Orphanage. These parties assert that the testatrix intended the word "deficit" used in the foregoing clause of the will to apply only in case there was a natural deficit, or such as was created by loss resulting from economic causes or natural shrinkage of assets. They assert further that a defalcation is not the result of an economic cause. Consequently, the $40,000 loss should be applied pro rata to all the legacies and bequests specified in the will so as to give everybody something.

The trial judge decreed:

(1) That the $10,000 shrinkage, due to worthless stock and costs of administration, "shall be charged to church and charity bequests and deducted therefrom, excepting from such charge and deduction the bequests to the Vestry of St. Luke's Episcopal Church of Salisbury, N. C., in the amount of $10,000 for the erection of a Memorial Pipe Organ, the bequest to the Vestry of St. Luke's Episcopal Church of Salisbury, N. C., in the amount of $7,000, toward the erection of a new parish house, and the bequest to the trustees for the Patterson School for Boys at Legerwood, N. C., in the amount of $7,000.

"(2) That the loss occasioned by the misappropriation of the executor, aggregating approximately $40,000, shall be chargeable to all bequests and divided between them pro rata according to the amount of each as stated in the will; except as to those church and charity bequests which must bear the loss prescribed in the preceding paragraph, and they must be charged pro rata with the rest of the bequests the said loss due to the misappropriation on their net legacy after deducting the loss and deficit from depreciation as set out in the preceding paragraph. In other words, all legacies named in the will are to share pro rata in the loss occasioned by the misappropriation of the executor, but the deficit chargeable to the church and charitable organizations set out in paragraph 1 are to share the loss occasioned by the executor's misappropriation proportionately upon the balance of their bequests after deducting their losses occasioned by the deficit as above set out."

Reviewing the controverted clause in the will, together with the various theories of interpretation, it would seem that the bald question is: On whom should the axe fall in the event the assets of the estate were not sufficient to pay all the legacies in full?

CLEMENT *v.* WHISNANT.

Of course, it is to be conceded that the intent of the testatrix should be the guide to courts. However, this process of probing the minds of persons long in their graves as to what they meant by words used when they were alive is, at best, no more than guesswork. Courts and text-writers have undertaken in some instances to make it highly scientific and specialized guesswork, but it remains guesswork nevertheless. Manifestly, the testatrix neither contemplated nor anticipated that her friend, the executor, would misappropriate $40,000 of money; and hence, as a plain matter of common sense, it is wholly impossible to undertake to ascertain with any degree of satisfaction the intention of a person concerning an event or transaction that had never occurred to him, or that he had never thought about. In those cases in which language is so muddled, confused, and ambiguous that it does not make sense, or works out strange, unusual, and unjust results, courts, under the guise of interpretation, have been compelled as a practical matter of the administration of law to make wills for people and do the best they can to produce equitable results.

In the case at bar the testatrix used the word "deficit," and thereby said in substance that if there was a loss it should fall on "church and charity; excepting the Vestry of St. Luke's Church and Patterson School for Boys." When she used the word "deficit" her estate was ample to pay everybody in full. Assuming that she contemplated a deficit from economic causes, and that in such event church and charity should first feel the pruning knife, what solid ground is there for concluding that if a loss or deficiency resulted from other causes that she would thereupon have turned the knife upon her relatives and friends. That is to say, that a contemplated loss from economic causes should fall upon outsiders and not upon the family, but an uncontemplated loss from other than economic causes should fall upon the family and friends and not upon the outsiders. In other words, the cause of the loss or source of the loss would determine the bearer of the burden. Certainly, these considerations open a wide field of speculation.

The testatrix chose the word "deficit." It may have been that she did not know the technical meaning and variations of the word, but she put it in the will and there it stands. It is broad enough to cover defalcation, misappropriation, shrinkage, or costs. In its popular meaning and acceptation it signifies deficiency—plain deficiency from any cause—and there is nothing in the controverted clause of the will, or in the context thereof, to indicate that the testatrix was using it in any other sense.

The diocese, Thompson Orphanage, and other general church and charity organizations relied upon the case of *Henry v. Griffis,* 56 N. W., 670. In that case the testator gave land to his boys and money to his

daughter, declaring in the will "if there is not personal property and money enough to make the amount, the boys is to pay enough to make the amount." The executor misapplied approximately $4,000 of the money, and the Iowa Court held that the loss resulting therefrom should be apportioned pro rata among the children. It must be observed, however, in that case a father was undertaking to deal with his own children, and it is not to be assumed, therefore, that he expected one to profit at the expense of the other. Moreover, there was no clause in the will undertaking to charge any part of the loss to an outsider.

The personal legatees rely upon the case of *Silsby v. Young and Silsby,* 3 Cranch, 250, 2d L. Ed., 429. *Chief Justice Marshall,* writing for the Supreme Court of the United States, said: "If, at the time of his death, his estate had been sufficient, but before it could be collected and applied according to his will, bankruptcies, or any other casualties, had occasioned a deficiency, no reason can be perceived by the Court for supposing that the contemplation of such a deficiency would have induced him to make a different arrangement of his affairs from what he would have made had he contemplated a deficiency at his death. And between such a deficiency and one occasioned by the fault or misfortune of an executor, chosen, not by his legatees, but by himself, the Court can perceive no distinction."

While the facts in the *Silsby case, supra,* are not identical with those in the case at bar, it is authority for the proposition that a deficiency may include, or is broad enough to include, losses resulting from the fault or misfortune of an executor.

There is nothing in the record to indicate that the construction of the new parish house or installation of the Memorial Pipe Organ had ever been undertaken, and the Court is not disposed to hold that those legacies imposed contractual obligation upon the estate or were such debts of piety as to impress a priority of payment. The testatrix directed that any deficit should be divided or borne pro rata among the "several bequests as made to church and charity and deduct the same from these," but that no deduction should be made from the legacies to the vestry as aforesaid, and to Patterson School. Obviously, such exemption of the legacies to the vestry and to Patterson School should become effective only in the event it was necessary to prune bequests to "church and charity." That is to say, that as between legacies given to "church and charity" the bequests to the vestry and the Patterson School should be preferred.

The Court concludes that the money available, after payment of costs, charges, and fees incident to administration, shall be first applied to the payment of the legacies set up in the will for relatives and friends, and that if the fund is not sufficient to pay such legacies in full, then they

shall be paid pro rata. After the payment of the personal legacies, the bequest to St. Luke's Vestry for the new parish house, the Memorial Pipe Organ, and Patterson School for Boys shall be paid, and the balance, if any, to other legatees as specified in the will. That is to say, the order of priority of payment shall be as follows: First, legacies to relatives and friends; second, legacies to St. Luke's Episcopal Church for the new parish house and the Memorial Pipe Organ and Patterson School for Boys; third, all other legacies to church and charity.

Reversed.

CLARKSON, J., took no part in the consideration or decision of this case.