## SALLY ORECK POLANS v. ORECK'S INCORPORATED AND ANOTHER.[1]

June 22, 1945.

No. 34,040.

*Fryberger, Fulton & Boyle,* for appellants.
*James J. Courtney,* for respondent.

YOUNGDAHL, JUSTICE.

This is an action to compel defendants to issue to plaintiff shares of stock of the corporate defendant (hereinafter called the new corporation) in the same amount as she held in its predecessor of the same name (hereinafter called the old corporation).

[1]Reported in 19 N. W. (2d) 435.

Plaintiff demurred to the answer on the ground that the allegations thereof were insufficient to constitute a defense. From an order sustaining the demurrer, defendants appeal.

Having in mind that upon a demurrer the allegations of the pleading must be considered as true, the essential facts are these: G. A. Oreck & Sons Company was organized as a Minnesota corporation on July 30, 1913, and for 30 years (the duration of its charter) engaged in the mercantile business in the city of Duluth. In 1919, its name was changed to Oreck's Incorporated, which is not the corporate defendant herein. The corporate defendant is a new corporation, organized originally as the Duluth Mercantile Company (hereinafter called the Duluth company) for the purpose of taking over the assets of the old corporation. On December 31, 1943, the Duluth company changed its name to Oreck's Incorporated, the same name used for many years by the old corporation. It was necessary to organize the new corporation in order to continue the business of the old corporation, because the directors had permitted the charter to expire without taking steps to extend or renew the same under Minn. St. 1941, § 301.60, subd. 9 (Mason St. 1940 Supp. § 7492-61[IX]). At the time of such expiration, there were outstanding 1,593 shares of stock, 218.8 of which were owned by plaintiff.

On November 13, 1943, over three months after expiration of the charter, all the shareholders of the old corporation except plaintiff organized the Duluth Mercantile Company. On November 16, 1943, the Duluth company offered to purchase all the property and assets of the old corporation. In payment therefor, the Duluth company offered to assume the obligations of the old corporation and to issue and deliver 1,593 shares of stock of the Duluth company to shareholders of the old corporation. In the event that any shareholder should refuse to accept shares in the new corporation, the Duluth company, in lieu thereof, offered to pay the fair cash value of the shares of such shareholder in the old corporation, said value to be determined by agreement, or, upon failure to agree, by an appraisement conducted in the manner provided by Minn. St.

1941, § 301.40, subd. 2 (Mason St. 1940 Supp. § 7492-39[II]). The directors of the old corporation, with the written consent of all the shareholders except plaintiff (more than two-thirds of the outstanding shares), accepted the offer of the Duluth company, and sold to it all the property and assets of the old corporation. A resolution was adopted on November 17, 1943, calling a meeting of the shareholders for December 3, 1943, for the purpose of considering and voting upon a resolution providing that the shares of the Duluth company to be received as part of the consideration for the sale of the property and assets of the old corporation should be divided pro rata among the shareholders thereof who were willing to accept for their shares of the old corporation an equal number of shares of the Duluth company; and also providing that the fair cash value of the shares of the old corporation be paid to any shareholder not willing to accept shares in the new corporation. On November 20, 1943, the secretary of the old corporation mailed to each of its shareholders, including plaintiff, a notice of the meeting. In this notice, the purpose of the meeting was stated to be as follows:

"The purpose of this meeting is to give to each shareholder the right to elect to receive for his shares of Oreck's Incorporated the fair cash value of the same or an equal number of shares of Duluth Mercantile Company; and to consider and vote upon a resolution providing that voluntary proceedings for the dissolution of Oreck's Incorporated be instituted and the shares of Duluth Mercantile Company received for the property and assets of Oreck's Incorporated, be divided pro rata among the shareholders of said Oreck's Incorporated who are willing to accept for their shares of Oreck's Incorporated, an equal number of shares of Duluth Mercantile Company and also providing that the fair cash value of his shares of Oreck's Incorporated, be paid to any shareholder who is not willing to accept for his shares of Oreck's Incorporated, an equal number of shares of Duluth Mercantile Company."

Pursuant to the notice, a meeting of the shareholders was held on December 3, 1943, and the owners of all the outstanding shares of the old corporation, including plaintiff, were represented at that meeting either in person or by proxy. A full report of the transaction under which the old corporation sold its property and assets to the Duluth company was made at that time, and the sale was confirmed and approved by resolution adopted by a vote of all the shareholders of the old corporation except plaintiff. Plaintiff filed written objections to the transfer of the assets of the old corporation to the Duluth company or to any person or corporation, and made accusations reflecting upon the honesty and ability of the officers of the old corporation. The following resolution was adopted at that meeting by the affirmative vote of all present except plaintiff:

"Be It Resolved that each shareholder of Oreck's Incorporated be and he hereby is required to make an election to receive for his shares of Oreck's Incorporated an equal number of shares of Duluth Mercantile Company or to receive for his shares of Oreck's Incorporated the fair cash value of the same to be determined by agreement between Duluth Mercantile Company and the shareholder, or, if they cannot agree, by an appraisement instituted and conducted in the manner provided by sub-division 2, Section 301.40 Minnesota Statutes 1941 or by a court of competent jurisdiction as the shareholder may elect."

Forms to be used in making such election were at that meeting presented by the secretary to each shareholder, and each shareholder except plaintiff signed an election to receive shares in the Duluth company in exchange for his shares in the old corporation. At that meeting plaintiff refused to make an election either to take shares in the new corporation or to accept the fair cash value of her stock in the old corporation. Thereupon, at the same meeting, another resolution was passed providing that the secretary be authorized to accept from the Duluth company in full payment for the property and assets of the old corporation a certificate for

1,374.2 of its shares (comprising shares of those who agreed to take stock in the new corporation) and an agreement under which the Duluth company assumed to pay all the obligations and debts of the old corporation, and also to pay plaintiff the fair cash value of her shares in the old corporation, to be determined either by agreement or by appraisement under said § 301.40, subd. 2, or by a court of competent jurisdiction, as plaintiff might elect. The resolution further provided that the secretary be authorized to surrender to the Duluth company the certificate so received and obtain in lieu thereof six other certificates of the new corporation issued to the individual shareholders in the number of shares held by them in the old corporation. Pursuant to that resolution, the Duluth company issued its certificate for 1,374.2 shares, which was later divided into six certificates pro rata among the shareholders of the old corporation, and an agreement was delivered to plaintiff under which the Duluth company agreed to pay plaintiff the fair cash value of her stock in the old corporation.

On December 6, 1943, plaintiff wrote the following letter to the Duluth company:

"Oreck's Incorporated and
Duluth Mercantile Company
First Avenue West and Superior Street
Duluth, Minnesota
"Gentlemen:

"I understand that I may now agree to accept stock in the re-organized corporation in proportion to my present holdings in Oreck's Inc., without waiving any rights which I might have. This is to inform you that I am willing to exchange my present holding for the new certificates, on such basis, when such certificates are ready, please notify me.

"Very truly yours,
"Sally Oreck Polans."

Plaintiff's offer was refused by the shareholders of the Duluth company at a meeting held on December 30, 1943. The reasons as-

signed therefor were that plaintiff for many years had not been in sympathy with the management or in harmony with the majority stockholders; that she made serious accusations against the officers of the corporation, reflecting upon their honesty and ability, and made various threats which had been a disturbing factor in the management of the corporation; that she objected to the expansion of the corporation, and efforts of the new corporation would be hindered by such objection; that an offer was made to her at the meeting on December 3, 1943, to accept stock in the new corporation or, in lieu thereof, the cash value of her stock in the old corporation, and that she refused to accept either offer, but instead made false, derogatory accusations against the management; that her objection on that date was accepted as a definite refusal to take an interest in the Duluth company; and that the transaction could not be opened up without the consent of all the shareholders of the Duluth company.

Plaintiff thereupon instituted suit to compel defendants to deliver the stock in the new corporation in exchange for her shares in the old corporation.

In the lower court and on appeal, defendants do not question the right of plaintiff to receive her pro rata share of stock in the new corporation provided she had made her election on December 3. In defendants' brief it is stated:

"If at the meeting on December 3, 1943, the plaintiff had requested additional time in which to make an election and such a request had been denied she would, no doubt, have cause for complaint."

Moreover, it is not necessary to decision here to consider in connection with the legality of the proceedings at the special meeting anything except the question whether defendants had the legal right to insist upon an immediate election. No fraud or impropriety is alleged. As the trial court aptly stated in its well-reasoned memorandum, the majority were no doubt acting for the best interests of the stockholders. In order to insure continuity

of the business, the new corporation was necessary, because the charter of the old corporation had expired without steps having been taken under the statute to extend it. Our discussion, therefore, will be limited to the narrow issue of the lawful right of the majority to insist upon an immediate election at the meeting of December 3. Defendants have cited no authority to sustain their contention that they had a right to insist upon an election on December 3. They concede that no statute is applicable to the facts in the instant case. Though no statute is applicable, it is interesting to note in this connection that, in case of consolidation or merger, a dissenting stockholder has a 20-day period within which to make an election. Minn. St. 1941, § 301.44 (Mason St. 1940 Supp. § 7492-43). Defendants' inability to find any authority to sustain their contention is not difficult to understand. It would be an illogical and inequitable rule of law which would require a dissenting stockholder under the circumstances existing here to make an immediate election. Of course, dissenting stockholders must show themselves prompt and vigilant in the assertion of their rights as such. Pinkus v. Minneapolis Linen Mills, 65 Minn. 40, 67 N. W. 643. It is inequitable for a stockholder, knowing that an act done by the directors and a majority of the stockholders in good faith for the benefit of the corporation is in fact unauthorized, apparently to acquiesce by his silence but secretly to reserve an option to repudiate the act in case of loss or to enjoy its benefits if it proves profitable. Fairness requires in such cases that dissenting shareholders should act promptly and make known their objections without unreasonable delay. If they fail to do so and assent to the unauthorized act, they will be estopped from denying that they have assented to or ratified the act. Pinkus v. Minneapolis Linen Mills, *supra*. Where a transaction is fair and free from overreaching, a minority stockholder who is fully informed of all its details and does not dissent within a reasonable time, his failure to do so being unexplained, will be deemed to have acquiesced, and cannot maintain an action to set aside the sale. Roberts v. Herzog, 110 Minn. 258, 124 N. W. 997.

It is not and cannot with good reason be denied that plaintiff acted promptly in the instant case and within a reasonable time. Plaintiff filed written objections to the legality of the proceedings of December 3. The meeting was held on a Friday. She made her election on Monday. Only Saturday—a short business day—and Sunday intervened between the time of the stockholders meeting and plaintiff's election. Though she may not have had any ground for objecting to the legality of the proceeding (a point which we do not here decide) other than the demand to make an immediate election, her objections were broad enough to protect her right to make an election three days later without being subject to the claim of laches or unreasonable delay.

It is significant that neither in the first resolution of the board of directors of November 17, nor in the notice of the stockholders meeting, nor in the first resolution adopted at the stockholders meeting on December 3, was anything said about the necessity of an election being made at once. Furthermore, no prejudice is alleged to have resulted to defendants by reason of the three-day interval between the stockholders meeting and the election by plaintiff. Defendants simply assert that it was important to have the matter done immediately and that they had a right to insist upon its being done forthwith. Such a contention is not consistent with equity or reason, nor is it supported by any authority. Under the circumstances in the instant case, the attempt of the majority to insist upon an election forthwith by plaintiff was unlawful. Dissenting stockholders have a reasonable time in which to assert their rights against unlawful acts of the majority. They are estopped from asserting such rights only when they attempt to act after unreasonable delay. Roberts v. Herzog, 110 Minn. 258, 124 N. W. 997, *supra;* 2 Dunnell, Dig. & Supp. § 2075. The court would be well within its rights under the facts here in ordering the issuance and delivery to plaintiff of the shares of stock in the new corporation. The principle is well recognized that, under certain circumstances, a court of equity has a right to protect minority stockholders from unlawful acts of the majority and to afford such relief

as may be necessary to protect their rights.   Thwing v. McDonald, 134 Minn. 148, 156 N. W. 780, 158 N. W. 820, Ann. Cas. 1918E, 420.
Affirmed.