EDWARD M. GADACH v.
BENTON COUNTY CO-OP ASSOCIATION.[1]

May 9, 1952.

No. 35,758.

[1]Reported in 53 N. W. (2d) 230.

508

*Levine & Levine,* for appellant.
*H. Horace Burry,* for respondent.

THOMAS GALLAGHER, JUSTICE.

This is an action for libel. The appeal is from an order sustaining defendant's general demurrer to the complaint. The order denied plaintiff the right to amend the complaint.

The complaint, which for present purposes must be regarded as true (Zion E. L. Church v. City of Detroit Lakes, 221 Minn. 55, 21 N. W. [2d] 203; Polans v. Oreck's Incorporated, 220 Minn. 249, 19 N. W. [2d] 435; Thiede v. Town of Scandia Valley, 217 Minn. 218, 14 N. W. [2d] 400; 5 Dunnell, Dig. § 7542), in substance alleged the following:

That defendant, a Minnesota corporation, with its principal place of business at Foley, at the times involved was engaged in selling gas, oil, grease, and other supplies and, in connection therewith, had in its employ a number of persons, including plaintiff.

That in November 1948 defendant wilfully and maliciously "instigated" the state to proceed against plaintiff on a charge that plaintiff had wilfully, wrongfully, and feloniously, with intent to defraud defendant, misappropriated $1,411.06 belonging to defendant.

That plaintiff was tried on this charge in November 1949 and was acquitted therefrom.

That in June 1950, after plaintiff's acquittal, defendant wilfully and maliciously libeled plaintiff by publishing to the Standard Accident Insurance Company, guarantor of the bond covering plaintiff, the fact that plaintiff had embezzled money belonging to defendant in the sum of $2,444.05. That subsequently defendant assigned its claim therefor to the insurance company for a settlement of $1,000, which sum was then paid defendant; that on July 24, 1951, the insurance company instituted a civil action against plaintiff for the sum of $2,444.05.

That on June 7, 1950, defendant further libeled plaintiff by having the Benton County News publish the following article concerning plaintiff:

"Benton County Co-op Receives Bond Check.

"The Benton County Co-op Association last week received a check in the amount of $1,000 from the Standard Accident and Insurance Co. of Detroit, Michigan. The check was in payment bond covering Ed Gadach at the time he was employed by the Benton County Co-op Association to take care of deficit in funds."

That because of defendant's false, wilful, and malicious accusations concerning plaintiff's supposed embezzlement, plaintiff was obliged to give up his job and leave his home and to retain counsel to defend him in the criminal prosecution and represent him in the civil action now pending against him, all to his special and general damage in certain specified amounts.

The demurrer was sustained on the ground that the foregoing allegations failed to state facts sufficient to constitute a cause of action.

■ Several well-established principles seem applicable here. Printed words which tend to injure the reputation of a person, expose him to contempt, degrade him in society, or lessen him in the esteem and confidence of his neighbors are, if untrue, libelous per se, even though they involve no imputation of crime. Byram v. Aiken, 65 Minn. 87, 67 N. W. 807; Rudawsky v. Northwestern Jobbers Credit Bureau, 183 Minn. 21, 235 N. W. 523. Words which prejudice or injure one in his office, trade, or profession are actionable per se. 4 Dunnell, Dig. & Supp. § 5518. Words, which taken by themselves have an innocent meaning, in connection with surrounding circumstances, may convey a defamatory meaning to those familiar with such circumstances. Johnson v. Force, 80 Minn. 315, 83 N. W. 182; 4 Dunnell, Dig. § 5505. If the published words, in effect, convey a defamatory meaning, it is immaterial what meaning the publisher intended to convey, or that he believed the words to be true. 4 Dunnell, Dig. & Supp. § 5505. Whether a defamatory meaning is conveyed is dependent upon how ordinary men understand the language used in the light of surrounding circumstances. 4 Dunnell, Dig. & Supp. § 5510. When the published words may be susceptible of either an innocent meaning or a defamatory one, dependent upon the occasion and circumstances, it is for the jury to determine which meaning was intended. 4 Dunnell, Dig. & Supp. § 5560.

■ With these principles in mind, we are of the opinion that the allegations of the present complaint, wherein defendant is charged with having the Benton County News publish the article above described, are sufficient to support an action for libel. A jury might well find that this article imputed to plaintiff a crime, or that it held him up to public contempt, injured his reputation, and lowered him in the confidence and respect of his neighbors. It might likewise find that it bore directly upon his integrity and

character and tended to prejudice or injure him in his trade or employment.

▮ Defendant asserts that the term "deficit" as used in the article means only a shortage, which need not necessarily be associated with any dereliction, either civil or criminal, on the part of plaintiff. Reference to decisions wherein courts have had occasion to define the word "deficit" indicates, however, that the term is considered broad enough to cover shortages due to defalcations and misappropriations, although it also may relate to losses occasioned by mistake or by shrinkage in values. In Clement v. Whisnant, 208 N. C. 167, 171, 172, 179 S. E. 430, 433, 101 A. L. R. 698, where it was held that the term "deficit" as used in a will included deficits occasioned by virtue of an executor's defalcations, as well as those attributable to shrinkage in the value of assets, the court stated:

"* * * It [the word deficit] is broad enough to cover *defalcation, misappropriation,* shrinkage, or costs. * * *

\* \* \* \* \*

"While the facts in the Silsby case, *supra* [Silsby v. Young, 7 U. S. (3 Cranch) 249, 2 L. ed. 429], are not identical with those in the case at bar, it is authority for the proposition that a *deficiency may include, or is broad enough to include, losses resulting from the fault or misfortune of an executor."* (Italics supplied.)

In Mutual Loan & Bldg. Assn. v. Price, 19 Fla. 127, the court limited the term "deficit" to include only a difference shown on the books of a corporation, not including amounts known to have been misapplied, because the parties, by their testimony and by virtue of an agreement, had given this meaning to the term. Therein, however, the court stated (19 Fla. 137):

"The sureties contend that the term 'deficit' is ambiguous; that as used in this agreement it means so much money wanting at the dates specified; that these amounts had been then appropriated and misapplied by the Treasurer, and that parol testimony is not admissible to show that its meaning was deficiency as shown by the

accounts, and not deficiency accompanied by misapplication. * * *

"The word deficit may have either of the significations contended for, and evidence of the surrounding circumstances, so far as they indicate the nature of the subject, is, in the language of the books, 'a just medium of interpretation of the language and meaning of the parties in relation to it.' * * * Now the term 'deficit' may not only indicate an amount wanting, as shown by the books, to balance the officer's account, but the fact may be that such amount had been then misappropriated by the officer and evidence showing the true state of facts is admissible."

The reasoning set forth in the cited cases appears sound and convincing that the term "deficit" may under certain circumstances convey a defamatory meaning.

■ Whether in the instant case the term "deficit in funds" was intended to convey a defamatory meaning must rest upon the jury's determination of how ordinary men would have understood its use in the published article in the light of the surrounding circumstances then present. According to the allegations of the complaint, a short time prior to the publication of the article plaintiff had been indicted and tried for the crime of embezzlement in connection with this same deficit, a fact well known, no doubt, to the residents of this community. These and like circumstances might lead a jury to conclude that ordinary men would reasonably have understood the article to mean that the deficit referred to therein was occasioned by plaintiff's defalcations or misappropriations, as previously charged in the criminal proceedings; that because plaintiff was responsible therefor the insurance company was required to make good a shortage occasioned by him; hence, that the words as used conveyed a defamatory meaning injurious to plaintiff and actionable if untrue.

■ Defendant asserts that the allegations of the complaint in themselves establish the truth of every word in the published article; that truth is a defense in an action for libel; hence, that an affirmative defense to the action is established within the complaint, thus making it vulnerable to a general demurrer. 2 Pirsig's

Dunnell, Minn. Pl. (3 ed.) § 1633. An analysis of the article does not sustain defendant's contentions in this respect. It states directly that the check was received in payment of a bond covering plaintiff at the time he was employed by defendant to take care of a "deficit in funds." There is no allegation in the complaint that establishes the truth of the statement that there was a "deficit in funds" during plaintiff's employment chargeable to the obligor in his bond. Plaintiff had denied such a deficit. The jury in the criminal action acquitted him of the charges thereof. The civil action against him has not yet been determined. It would seem clear, therefore, that for present purposes defendant cannot assert the truth of the published article in its entirety. While defendant and the insurer may be convinced that a deficit did exist, at the present time their conclusion in this respect is not binding as an established fact either upon plaintiff or a court of law. It follows that defendant's contention that the complaint itself establishes the truth of all allegations therein alleged to be libelous cannot be sustained.

Reversed.