The CHURCH OF SCIENTOLOGY OF
MINNESOTA, Appellant,

v.

MINNESOTA STATE MEDICAL
ASSOCIATION FOUNDATION,
et al., Respondents,

John LaBree, etc., et al., Defendants,

American Medical Association,
Respondent.

No. 47457.

Supreme Court of Minnesota.

March 17, 1978.

Daniel Zeddies and William Starr, Minneapolis, for appellant.

Geraghty, O'Loughlin & Kenney and David C. Hutchinson, St. Paul, for Minn. St. Med. Assoc.

Jardine, Logan & O'Brien, Donald M. Jardine and Kent E. Charpentier, St. Paul, for Am. Med. Assoc.

Heard before ROGOSHESKE, PETERSON and WAHL, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff, The Church of Scientology of Minnesota, brought this action for libel and appeals from the summary judgment granted to all defendants. We affirm as to some defendants on the ground that the action is barred by the statute of limitations and as to the remaining defendants on the ground that their acts do not constitute publication of a libel.

The complaint alleges that Scientology is a religion which was founded in 1952 by L. Ron Hubbard. Hubbard is an advisor to Churches of Scientology, and his name and reputation have been closely identified with Scientology. In March 1974, the Office of Consumer Services of the Minnesota Department of Commerce requested information from defendant Minnesota State Medical Association (MSMA) concerning Scientology. In response to this request, defendant Harold W. Brunn, acting in his capacity as executive secretary of MSMA,[1] sent the

---

1. Harold W. Brunn is an official in both MSMA and the Minnesota State Medical Association Foundation. Due to an excusable error, the complaint named the Foundation rather than MSMA as the organization responsible for sending the article to the Office of Consumer Affairs. Plaintiff's motion to amend its complaint to correct the error was denied by the district court as moot when summary judgment was granted to defendants. For purposes of this appeal, we will consider plaintiff's motion

office several newspaper clippings and a copy of an article written by defendant Ralph Lee Smith entitled "Scientology—Menace to Mental Health." This article had appeared in the December 1968 issue of Today's Health, a lay-oriented magazine which is published by defendant American Medical Association (AMA).[2] MSMA also sent a copy of the article to "Action Line," a column in the St. Paul Dispatch newspaper, in response to its request, although it is unclear when this copy was sent.

Plaintiff alleges that the article in its entirety is false and defamatory but refers particularly to 11 portions of the article which by direct statement and implication convey the meaning that Scientology is not a bona fide religious or nonprofit organization, that Scientology has seriously harmed the health of persons seeking its aid and has induced mental illness, and that Churches of Scientology have fraudulently or dishonestly obtained large sums of money for Hubbard's personal gain.[3] Plaintiff also alleges that each of the defendants acted with knowledge of the falsity of the statements made in the article or with reckless disregard for their truth or falsity.[4]

The district court granted summary judgment to AMA, its employees, and the author on the ground that the action was barred by Minn.St. 541.07, the 2-year statute of limitations for libel and slander actions. Summary judgment was granted to MSMA and its officers (the remaining defendants) on the grounds that the article was not defamatory, that these defendants had not republished the article, and that their actions were protected by both a qualified constitutional privilege and a common-law privilege. On appeal, plaintiff argues that summary judgment was not proper on any of these grounds.

1. We turn first to the question of whether the statute of limitations bars plaintiff's action against AMA, its employees, and the author. In *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775 (1975), appeal dismissed, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976), we held that the 2-year period of limitations begins to run when the allegedly defamatory material is published and will not be tolled simply because the plaintiff lacked knowledge of the publication. In this case, plaintiff's action was

to have been granted since it was clearly proper under Rule 21, Rules of Civil Procedure.

**2.** Plaintiff alleges that the circulation of Today's Health exceeds 750,000 per issue and that statements made in Today's Health are widely believed by the general public to be true.

**3.** Plaintiff cites the following passages from the article: (1) "Scientology—Menace to Mental Health," the article's title; (2) "dangerous cult," referring to Scientology; (3) "Scientology has grown into a very profitable world-wide enterprise . . ." and (4) "thrives on glowing promises that are heady stuff for the lonely, the weak, the confused, the ineffectual, and the mentally or emotionally ill"; (5) "Whatever the actual figures may be, it is clear that large numbers of persons are responding to Scientology's promise of a quick, easy road to mental and emotional health. Unfortunately, the road may lead not to health but to tragedy and disaster for themselves and their families"; (6) "Police records cite the case of one wealthy Floridian who spent some $28,000 on Scientology processing"; (7) "The Scientology movement is coordinated and governed through the 'Hubbard Communication Office—World Wide' (HCO–WW) at Saint Hill. This office distributes Hubbard's decision, policies, dicta, and accounts of such things as his visits to heaven.

It is also Hubbard's vigilant international collection agency, raking in a slice of the action wherever preclears are being processed"; (8) "Instead of discussing present reality, the auditor wishes to push the preclear into a world of fantasy," referring to persons receiving spiritual counseling; (9) "Sooner or later he begins to exhibit symptoms resembling those of schizophrenia. These symptoms are encouraged * * *," referring to persons receiving Scientology counseling; (10) " * * * Scientology keeps the patient in this illusory state and exploits it for profit," referring to alleged reverence towards persons directing the Scientology Centers, and toward L. Ron Hubbard; (11) "Before it finally goes the way of all cults, Scientology may leave behind a legacy of tragedy unmatched in the annals of fads and fallacies in mental health."

**4.** Plaintiff has repeatedly alleged that statements made in the article are false. Defendants have not alleged the truth of the statements as a defense, and in any event plaintiff's allegations of falsity must be accepted for purposes of defendants' motion for summary judgment. *Gadach v. Benton County Co-op Assn.,* 236 Minn. 507, 53 N.W.2d 230 (1952).

filed in October 1975, more than 5 years after the article in question was first published. Thus, the action against the defendants involved in the first publication—AMA, its employees, and the author—is clearly barred unless for some reason the statute of limitations was tolled or began to run anew at a later date.

Plaintiff contends that for purposes of suit against both AMA and MSMA the statute of limitations began to run anew in March 1974, when MSMA "republished" the article. This is the so-called "multiple-publication rule" embodied in the common-law rule that each repetition of a libel constitutes a separate and distinct publication giving rise to a cause of action.[5] In contrast, defendants urge us instead to adopt the so-called "single-publication rule" which originated in New York and has been adopted by several other jurisdictions and the American Law Institute.[6] Under the "single-publication rule," the statute of limitations begins to run when a mass-produced newspaper, book, or magazine is first released to the public, and the statutory period for actions against the original publisher will not begin to run again as a result of subsequent incidental republications. *Winrod v. Time, Inc.,* 334 Ill.App. 59, 78 N.E.2d 708 (1948); *Polchlopek v. American News Co., Inc.,* 73 F.Supp. 309 (D.Mass. 1947); *Means v. MacFadden Publications, Inc.,* 25 F.Supp. 993 (S.D.N.Y.1939).

■ This court has never had occasion to consider which rule should be applied in Minnesota.[7] Even if we were to assume that MSMA's acts constitute republication of the article, the present case persuades us that the "single-publication rule" is the better rule because it reflects the facts of modern-day mass publishing and duplicating and gives effect to the policy of repose

underlying the statute of limitations. Plaintiff has alleged that over 750,000 copies of the article were published by AMA. With this number of copies in existence, occasional republications inevitably occur. If every such republication started anew the period for bringing actions against the original publisher, then the 2-year statute of limitations would be rendered a nullity. To avoid that unreasonable result, we hold that § 541.07 requires those who claim damage from mass-produced libel to bring their actions against the original publisher within 2 years of the original publication. We accordingly affirm summary judgment in favor of AMA, its employees, and the author on the ground that the action was barred by the statute of limitations.

2. Turning to plaintiff's action against MSMA and its officers, we need only consider whether the article is defamatory and whether MSMA and its officers published it.

■ Words are defamatory when they tend to injure the plaintiff's reputation and expose the plaintiff to public hatred, contempt, ridicule, or degradation. *Gadach v. Benton County Co-op Assn.,* 236 Minn. 507, 53 N.W.2d 230 (1952). Words may be divided into those that cannot possibly have a defamatory meaning; those that are reasonably susceptible to a defamatory meaning as well as an innocent one; and those that are clearly defamatory on their face. *Morey v. Barnes,* 212 Minn. 153, 2 N.W.2d 829 (1942); 11A Dunnell, Dig. (3 ed.) § 5509. In construing the language of the alleged libel as set forth in the complaint, courts must give it its obvious and natural meaning. *Jones v. Monico,* 276 Minn. 371, 150 N.W.2d 213 (1967). Under these standards, the article in question is defamatory on its

**5.** E. g., see, *Lewis v. Reader's Digest Assn. Inc.,* 162 Mont. 401, 512 P.2d 702 (1973); *Hartman v. American News Co.,* 69 F.Supp. 736 (W.D. Wis.1947).

**6.** *Wolfson v. Syracuse Newspapers, Inc.,* 254 App.Div. 211, 4 N.Y.S.2d 640 (1938), affirmed, 279 N.Y. 716, 18 N.E.2d 676 (1939); Annotation, 42 A.L.R.3d 807, 815; Restatement, Torts 2d, § 577A.

**7.** Plaintiff cites *Zier v. Hoflin,* 33 Minn. 66, 21 N.W. 862 (1885), but no statute of limitations issue was raised in that case. Zier stands for the proposition that in assessing damages the factfinder may consider foreseeable republications of a libel which are the natural consequences of a defendant's original publication.

face, since statements charging another with fraud or dishonesty are defamatory regardless of the terms in which they are couched. *Uhlman v. Farm, Stock and Home Co.,* 126 Minn. 239, 148 N.W. 102 (1914).

We turn then to the question of whether the acts of MSMA and its officers constitute republication of the article. "Publication" is a term of art in defamation law expressing one of the elements of that tort. Those who merely deliver or transmit defamatory material previously published by another will be considered to have published the material only if they knew, or had reason to know, that the material was false and defamatory. See, Restatement, Torts 2d, § 581. It is this rule that protects libraries and vendors of books, magazines, and newspapers. *Hartmann v. American News Co.,* 171 F.2d 581 (7 Cir. 1948); *Balabanoff v. Fossani,* 192 Misc. 615, 81 N.Y. S.2d 732 (1948).

In this case, MSMA and its officers merely acted as a conduit between the original publisher and the parties who had requested information. The article's original publisher was known to be reputable, therefore MSMA and its officers had no reason to believe that the article was false and defamatory. In these circumstances, the acts of MSMA and its officers were analogous to those of a library or news vendor and did not constitute publication.

Because summary judgment for MSMA and its officers was proper on this ground, we need not reach defendants' claims to the protection of a qualified constitutional and a common-law privilege.

We need not, furthermore, reach the critical question of who would have borne the burden of proving the truth or falsity of the article's statements had the case gone to trial. Under the common law, it was consistently held that defamatory statements will be presumed false and that the defendant bears the burden of proving their truth as a defense.[8] This view is consistent with the common law's concern for the plaintiff's reputation, and it recognizes the difficulty of proving a negative, such as the untruth of a statement.[9] However, the common-law view that the defendant bears the burden of proving the truth of the statement does not easily mesh with constitutional considerations. The United States Supreme Court's decisions since *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), hold that a plaintiff must show fault by the defendant regarding the truth or falsity of the defamatory communication, and where the plaintiff is a public figure or public official, he must show that the defendant knew the communication was false or acted with reckless disregard as to whether it was false.[10] For a public-figure or public-official plaintiff to meet these requirements, he must, as a practical matter, assume the burden of proving that the communication was false. This is, of course, contrary to the common-law view. The American Law Institute has expressly withheld an opinion on this problem. Restatement, Torts 2d, § 613, Caveat and Comment *j.* Since the present case does not require us to resolve this difficulty, we merely note its presence for future consideration.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

8. *Wilcox v. Moore,* 69 Minn. 49, 71 N.W. 917 (1897); *Gadach v. Benton County Co-op Assn. supra;* Prosser, Torts (4 ed.), § 116, and note 10.

9. As an illustration, were a storekeeper to bring an action based on a newspaper statement that he shortchanges his customers when he gets a chance, it would be extremely difficult for the storekeeper to prove that the statement was false.

10. See *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Time, Inc. v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976). The leading Minnesota case is *Rose v. Koch,* 278 Minn. 235, 154 N.W.2d 409 (1967). See, also, *Anderson v. Kammeier,* Minn., note 5, 262 N.W.2d 366, 372 (filed November 18, 1977); and Note, 3 Wm. Mitchell L.Rev. 81 (1977).