Harry A. JOHNSON, Jr., M.D., Plaintiff,

v.

COLUMBIA BROADCASTING SYSTEM, INC., a California corporation, Defendant.

No. 3–95–624.

United States District Court, D. Minnesota, Third Division.

July 9, 1998.

Allen Donald Barnard, John P. Boyle, Michael H. Pink, Best & Flanagan, Mpls, MN, for Plaintiff.

John Philip Borger, Eric Edwin Jorstad, Faegre & Benson, Mpls, MN, Susanna M. Lowy, Anthony Michael Bongiorno, CBS Inc., New York City, for Defendant.

## ORDER

ALSOP, Senior District Judge.

This matter is before the court upon Defendant's third motion for summary judgment, filed in response to Plaintiff's First Amended Complaint. The Court will grant in part and deny in part Defendant's motion.[1]

## BACKGROUND

Plaintiff, a cosmetic surgeon in the Twin Cities, brought this suit against Defendant after WCCO, the local CBS affiliate, broadcast a ten o'clock news segment on November 27, 1993 entitled "Scarred for Life." Johnson alleges that the segment presented a sensationalized, misleading and deceptive view of his surgery practice, and as a result, his practice was essentially destroyed. The central claim in this case (Count Two of Plaintiff's Amended Complaint) is one for tortious interference with prospective contractual relations. This Court required that Plaintiff prove the elements of defamation in addition to the usual elements of tortious interference in its June 24, 1997 order. The Court ruled on Defendant's second motion for summary judgment on November 5, 1997, finding that only some of the false assertions from the broadcast alleged by Plaintiff were pled with sufficient particularity to be actionable. After requests for reconsideration by Plaintiff, on February 18, 1998, the Court permitted Plaintiff to amend his Complaint to properly plead those allegedly false assertions that had lacked sufficient particularly in the original Complaint. This amendment was allowed "in light of this Court's long-standing policy of affording all litigants an opportunity to have their entire case heard on the merits." The Court accordingly vacated all parts of the November 5, 1997 order pertaining to Count Two, and allowed Defendant the opportunity to file a third motion for summary judgment on all false assertions alleged by Plaintiff in his First Amended Complaint—even those previously addressed in the November 5th order. Upon careful review of the parties' thorough briefing on

---

1. Because of its familiarity with the case, the Court deemed oral argument unnecessary and has considered and ruled upon the motion without a hearing pursuant to Fed.R.Civ.P. 78.

this third motion for summary judgment, the Court will now revisit the issues surrounding the appropriateness of summary judgment on each of Plaintiff's six "false assertions".

## STANDARD OF REVIEW

■ Summary judgment is proper only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The First Amendment concerns inherent in defamation-type cases suggest that in "close cases" this Court should "err on the side of nonactionability." *Hunter v. Hartman*, 545 N.W.2d 699, 705 (Minn.Ct.App. 1996) *citing Liberty Lobby v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C.Cir.1988). Whether the factual assertions alleged by Plaintiff are capable of being proven false is a question of law for the Court. *Stock v. Heiner*, 696 F.Supp. 1253, 1259 (D.Minn. 1988)[2]. The other issues, which will be outlined below, are questions of fact to be reviewed on a motion for summary judgment under the aforementioned standard.

## DISCUSSION

■ "The elements of a common law defamation action are well settled. In order for a statement to be considered defamatory it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community." *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). There is no factual dispute as to whether the assertions alleged by Plaintiff *tend* to "damage his reputation and lower his estimation in the community," and there is no dispute that the broadcast was communicated to third par-

ties.[3] On the other hand, whether there are fact issues regarding the alleged falsity of the statements is vigorously debated by both parties. Furthermore, constitutional limitations on common law defamation actions require that Plaintiff prove at least negligence on the part of Defendant in this *de facto* defamation case involving a private figure and a matter of public concern. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). First Amendment considerations also mandate that "statements of public concern ... be provable as false." *Milkovich*, 497 U.S. at 19, 110 S.Ct. 2695. Defendant contends that Plaintiff is unable to survive summary judgment on each of these elements as well. It is also contested by the parties whether Plaintiff can proceed to trial on many of the alleged false assertions because of the fact that they are implied, rather than expressly stated, in the broadcast. The law surrounding this last issue—"defamation by implication"—is "fraught with subtle complexities," 50 Am. Jur.2d Libel and Slander § 160 (1995), and warrants a more detailed discussion.

■ The common law "historically recognized defamation by implication," as it merely inquired whether a publication "contains a defamatory meaning" and held publishers liable for "the implications of what he or she has said or written, not merely the specific, literal statements made." *Toney v. WCCO*, 85 F.3d 383, 392 (8th Cir.1996) (citations omitted). At a minimum, however, for a implied statement to be actionable, the words used must be "capable of the [alleged] defamatory meaning." *Id.* at 386. Further limitations on the actionability of defamation by implication, it appears, have arisen in accordance with the First Amendment restrictions on common law defamation established by *Sullivan* and its progeny.[4] The extent of

---

**2.** The Supreme Court has since delineated the proper analysis to be applied for such a determination in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), but it remains a question of law.

**3.** Whether the *alleged* implications from the broadcast were communicated to third parties, however, is disputed to an extent and addressed in the discussion regarding defamation by implication, *infra*.

**4.** *Compare Chapin v. Knight–Ridder*, 993 F.2d 1087 (4th Cir.1993) ("because the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true. The language must ... affirmatively suggest that the author intends or endorses the inference.") *with Gadach v. Benton County Co–op*, 236 Minn. 507, 53 N.W.2d 230, 232 (1952) ("it is immaterial what meaning the publisher intended to convey, or that he believed the words to be true").

such limitations on implied defamation under Minnesota law is debated by the parties. CBS contends in its brief that "a claim for defamation by implication requires that the plaintiff produce evidence of additional material facts *knowingly* omitted by the defendant that could have removed the allegedly defamatory tone of what was published." Defendant's Memorandum at 12 (emphasis added), *citing Anjoorian v. Dept. of Public Safety*, 1997 WL 527233 at 5 (Minn.Ct.App.) (unpublished). Plaintiff counters that the holding of *Toney*, 85 F.3d 383 (8th Cir.1996), merely states that "defamation by implication occurs when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, *or* (2) creates a defamatory implication by omitting facts, such that he may be held responsible for the defamatory implication ..." Plaintiff's Memorandum at 11 (citations omitted).

 The clearest statement on this murky issue comes from the Ninth Circuit which recently reaffirmed their rule that in defamation by implication cases, "subjective or actual intent is required and that 'there is no actual malice when journalists unknowingly mislead the public ... all the courts of appeal that have considered cases involving defamation by implication have imposed a similar actual intent requirement.'" *Dodds v. ABC*, 145 F.3d 1053, 1064 (9th Cir.1998) (citations omitted). Although Plaintiff need not show actual malice in this action[5], CBS cannot be liable for defamation without having been found at least negligent in ascertaining the purported falsity of the alleged defamatory statements. The Court finds that the *Dodds* Court's intent requirement for implied defamation cases involving public figures is equally applicable to this case despite the fact that Plaintiff is not obligated to go so far as to prove actual malice. Just as "there is no actual malice when journalists unknowingly mislead the public," the Court believes that a libel Defendant cannot prop-

erly be found negligent in determining the falsity of an implication it published unknowingly. It would seem illogical to conclude that a publisher "should have known" a statement was false (as required by *Gertz* ) when that same publisher was never aware that he or she was making such a statement. Thus, in cases involving implied defamation, the Court finds that a Plaintiff must prove not only that the alleged implications can be reasonably derived from the broadcast (the more traditional element of implied defamation), but also that Defendant intended those implications.[6]

The Eighth Circuit held in *Toney* that "[w]hat Minnesota law refers to as defamation by implication occurs when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, *or* (2) creates a defamatory implication by omitting facts, such that he may be held responsible for the defamatory implication ... even though the particular facts are correct." 85 F.3d at 387. In effect, *Toney* requires that Plaintiff prove not only that "a statement is capable of being interpreted as defamatory," 85 F.3d at 386, but also that the juxtaposition of facts or the omission of facts indicates that Defendant "may be held responsible for the defamatory implication ... even though the particular facts are correct." The difference between requiring a Plaintiff to prove that a Defendant is "responsible" for an implication because of factual juxtapositions or omissions as in *Toney*, and requiring a Plaintiff to present evidence that a Defendant "intended to convey [a] defamatory implication" as in *Dodds*, appears to be only a semantic one. Thus, the Court reads *Toney* as standing for the proposition stated directly in *Dodds*: "[i]t is not enough, however, to show that the implication was reasonable ... [Plaintiff] must **further** establish that [Defendant] intended to convey the defamatory implication." *Dodds*, at 1063 (emphasis added).[7]

---

5. The Court held in its June 27, 1997 order that Dr. Johnson was not a public figure.

6. Although this additional requirement arises because the Plaintiff must prove Defendant's negligence as to falsity, it is, in essence, a separate element for the purposes of this case.

7. *See also White v. Fraternal Order of Police*, 909 F.2d 512 (D.C.Cir.1990), in which the D.C. Circuit held that "the court must first examine what defamatory inferences might reasonably be drawn from a materially true communication, and then evaluate whether the author or broadcaster has done something beyond the mere reporting of true facts to suggest that the author or broadcaster intends or endorses the inference."

■ Therefore, because the defamation component of Count Two of Plaintiff's Amended Complaint rests largely upon statements that were allegedly implied by the broadcast, he bears the burden of proving both that the broadcast is capable of being interpreted as alleged, and that Defendant intended the alleged implications—in addition to the other common law and constitutional elements typically required in cases of explicit defamation. Accordingly, the Court finds that to facilitate a comprehensible ruling on this motion, the issues to be resolved regarding any allegedly implied statements should be addressed in the following order: First, is the alleged statement capable of being proved true or false? Second, is the relevant portion of the broadcast susceptible to the implication alleged? Third, did the Defendant intend the implication alleged? Fourth, is the alleged implication in fact false? Fifth, would a person in the exercise of reasonable care have known that the implication was false? As noted, the first issue is a question of law, and the remaining four are questions of fact.

### A. Allegedly Implied Statement # 1: Dr. Johnson is a criminal or under criminal investigation.

■ The Court finds that this allegedly implied statement is provable as false and that the portions of the broadcast discussing the criminal investigation into stolen medical equipment could reasonably be interpreted as implying that Dr. Johnson conspired to steal, or was under investigation for conspiring to steal, medical equipment. Therefore, it is for a finder of fact to decide whether the audience. did so interpret the broadcast to imply this statement. There are also fact issues as to whether CBS intended this implication raised by the context of the relevant portions of the broadcast, and particularly by the statement "and this investigation is not his only problem." Furthermore, the evidence presented by Plaintiff in his brief raises issues of fact as to the substantial truth or falsity of this implied statement and as to whether CBS should have known that the implication was not substantially true. Defendant's motion for summary judgment on this implied statement will be denied.

### B. Allegedly Implied Statement. # 2: The scarring incurred by Janice Dirks and Shelly Armstrong resulted from Dr. Johnson's surgical negligence.

■ The Court finds that this alleged implication is capable of being proven false. The relevant portions of the broadcast are reasonably susceptible to this implication and it is an issue of fact whether the implication was actually gleaned from the broadcast. The tenor of parts of the broadcast, as well as the theme "scarred for life", creates a fact issue as to whether CBS intended to convey this impression. To the extent that Dr. Johnson caused the scarring incurred by these two patients by failing to obtain their informed consent, the implication appears to be true. However, the broadcast is also arguably susceptible to the implication that **surgical** incompetence caused the scarring, the truth or falsity of which at least raises issues of fact. Whether CBS should have known that this implication was true or false is also a sufficiently disputed issue so as to survive summary judgment. Defendant's motion as to this implied statement will be denied.

### C. Allegedly Implied Statement # 3: Dr. Johnson is not qualified to perform cosmetic surgery.

■ Plaintiff alleges in his amended Complaint that the broadcast falsely asserted "Dr. Johnson lacks the proper qualifications, certifications, board memberships, and training to perform cosmetic surgery." This more specific allegation is capable of being proven false and is an implication reasonably interpreted from the broadcast. It is possible that CBS merely intended to state that Dr. Johnson was, unlike most surgeons who perform similar procedures, not certified by a recognized Board. However, the broadcast does create fact issues as to whether CBS intended to imply that he lacked the proper qualifications, certifications, and training to perform the procedures to which his practice is limited. If this implication was indeed intended by CBS, then fact issues also exist as to whether the implication is false and whether CBS knew or should have known that it was false. Defendant's motion for

summary judgment as to this implied statement will be denied.

## D. Allegedly Implied Statement # 4: Dr. Johnson is unable to pay his rent and his failing financial fortunes are affecting his medical practice.

■ Implied statements regarding Dr. Johnson's financial status, particularly his ability to pay his rent, are capable of being proven false. The references to his bankruptcy and the unlawful detainer action brought by his landlord are also capable of implying that he is presently experiencing financial difficulty. There are certainly fact issues as to whether CBS intended this implication and its truth or falsity is also sufficiently disputed so as to survive summary judgment. Whether CBS knew or should have known that his financial situation was or was not unstable seems questionable but remains a fact issue nonetheless.

■ The implication that his financial fortunes affected his medical practice is an opinion which the Court finds implies the existence of provably false facts. The statement that "there is no evidence his money problems affected his practice, but patient after patient say Dr. Johnson sold them a promise a promise he couldn't keep" can reasonably be interpreted as implying the opposite of what is expressly stated in the first clause—namely, that his money problems were affecting his practice and forcing him to convince unwilling patients to have surgery which was ultimately unsuccessful. There are fact issues as to whether CBS intended this implication based upon the juxtaposition of the two clauses of the aforementioned sentence. This implication may be nonactionable as a supportable interpretation of true facts were it to be revealed at trial that Dr. Johnson did in fact "sell" unwarranted procedures to "patient after patient," and that he was experiencing financial hardship. Nonetheless, at this point, there are fact issues as to the truth or falsity of the implied facts and as to the reasonable care exercised by CBS in regard to their truth or falsity. Defendant's motion for summary judgment on this implied statement will be denied.

## E. Allegedly Implied Statement # 5: Dr. Johnson has engaged in a pattern of trying to sell procedures, not telling patients about complications and doing procedures the patient has not agreed on.

■ Unlike the previous four alleged statements, this assertion is explicitly stated in the broadcast, but is couched in the form of another doctor's opinion. However, "[i]t would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think'." *Milkovich*, 497 U.S. at 19, 110 S.Ct. 2695. The "dispositive question ... [is] whether a reasonable factfinder could conclude that the statements in the [opinion] could imply an assertion" that there is indeed such a pattern. *Id.* at 21, 110 S.Ct. 2695. The Court finds that even though CBS published this statement as if it was the opinion of Dr. Zook, it can reasonably be interpreted as an assertion by CBS which implies actual facts about Dr. Johnson's practice. Although what constitutes a "pattern" is a fairly subjective question, the Court finds that a "pattern" in the context of the broadcast implies the existence of at least more than two cases. And while Dr. Zook is entitled to render a reasonable interpretation of facts presented him by CBS (and thus would not be individually liable for his statements), insofar as it is disputed whether the information provided to Dr. Zook (in the form of affidavits or otherwise) is false, it remains disputed whether CBS published an opinion implying the existence of false facts. The Court finds that Plaintiff has presented sufficient evidence to create fact issues as to whether Dr. Johnson did in fact try to sell procedures in more than two instances, whether Dr. Johnson did in fact fail to tell patients about complications on more than two occasions, and whether Dr. Johnson did in fact perform procedures not agreed upon by the patient in more than two cases. The requisite fault on the part of CBS also remains in dispute. Defendant's motion for summary judgment as to this statement will be denied.

### F. Allegedly Implied Statement # 6: Dr. Johnson runs a factory.

 This statement directly from the broadcast does not contain a provably false connotation, nor can it reasonably be interpreted as stating actual facts about an individual. Rather, it is more characteristic of nonactionable "rhetorical hyperbole." *Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695. Defendant's motion for summary judgment as to this statement will be granted.

As there are numerous fact issues to resolve regarding several potentially damaging statements, the Court will not address at this time Defendant's argument that the damages to Dr. Johnson caused by the truthful parts of the broadcast subsume any damages caused by allegedly false statements implied in the "Scarred for Life" segment. Also, Defendant's argument that Plaintiff's claims under Count Two are time-barred is without merit.

Therefore, upon review of the files, records, and proceedings herein,

**IT IS ORDERED:**

1) Defendant's motion for summary judgment as to Count Two of Plaintiff's Complaint is granted in part and denied in part.

2) Defendant's motion for summary judgment on the statement that "Dr. Johnson runs a factory" is GRANTED.

3) Defendant's motion for summary judgment as to all other statements, express or implied, is DENIED.