JAMES R. TAWNEY v. SIMONSON, WHITCOMB & HURLEY COMPANY.[1]

December 31, 1909.

Nos. 16,298—(104).

**Libel per se — Pleading — Defense of Privilege — Malice.**

Plaintiff's complaint charged that defendant newspaper published of him as a member of congress this, among other things, namely: "Tawney, proved a falsifier of public documents by his misquotation upon the floor of congress of a letter from the secretary of the treasury and his misstatement of facts with respect to an investigation and exposure in the bureau of engraving and printing," and that defendant thereby meant to charge, and was understood to have charged, plaintiff with having deliberately and wilfully falsified upon the floor of congress by such misquotation and misstatement. The answer admitted the publication, asserted the truth of the identical words quoted, and qualified privilege or justified comment on public men. The reply completed the issues. Motion for judgment on the pleadings was granted. It is *held:*

1. That the words published were not as a matter of law free from defamatory signification.

(a) Words charging misconduct in office, want of official integrity or

[1] Reported in 124 N. W. 229.

fidelity to public trust, words inconsistent with the due fulfilment of official duty, words which tend to deprive an official of his office, and words which are likely to produce public contempt and the reprobation of right-minded men, are libelous per se.

(b) That construction of the words alleged to be defamatory must be adopted which will give to the matter such a meaning as is natural and obvious in the plain and ordinary sense in which the people would naturally understand what was uttered. The published matter must be construed as a whole.

(c) The unmodified charge published in writing that a member of congress had falsified public documents on the floor of congress is libelous per se.

(d) Words susceptible of conveying a defamatory meaning may or may not be deprived or may or may not be intensified in that quality by construction in connection with other parts of the context. In this case the statement that plaintiff had falsified was not deprived of its defamatory signification by association with other parts of the article published.

2. The truth of the charge as a matter of law did not appear on the face of the pleadings.

(a) A motion for judgment on the pleadings in an action for libel should not be granted, if the answer asserted a justification subtantially less broad than the charge, or the truth in a sense different from that reasonably laid in the innuendo.

(b) The defense of truth as to misquotation was not made out as a matter of law upon the face of the pleadings because:

Plaintiff's "misquoting" statement did not purport to be a quotation from the letter of the secretary of the treasury, but a statement of its effect.

Defendant was expressly charged by the complaint with wilful and deliberate wrong. Viewed as a misconstruction, his statement may have been incorrect; but it does not necessarily appear on the face of the pleadings to have been wilfully and deliberately untrue.

Whether extrinsic evidence was necessarily involved in determining the truth of plaintiff's statement, quære.

(c) On the assumption of the truth of other charges, the justification as a matter of law was not as broad as the charge.

3. The defense of qualified privilege or of fair comment as a matter of law was not made out. Express malice was alleged, and for the purposes of the motion admitted. Express malice destroys the right of fair comment and criticism or qualified privilege.

Action in the district court for Freeborn county to recover $10,000

damages for libel published in The Evening Tribune, a newspaper published in the city of Albert Lea, and generally circulated within that city and within the First congressional district of Minnesota, from which district plaintiff was elected member of the national house of representatives.

So far as material here, the history of this case is as follows:

The complaint of plaintiff and appellant set forth that the defendant and respondent, publishers of a newspaper in general circulation, published "of and concerning this plaintiff as such member of congress, and of and concerning his official acts, duties and conduct as such member of congress, these words:

" 'WHO ARE THESE MEN?

" 'In the controversy between President Roosevelt and congress we often heard how the East was uncertain in its indorsement of the President, but there was no question about the sentiment in the West. With this in mind we give our readers a sample of the expression of Eastern papers. The Philadelphia North American, than which there is no more staid and careful chronicler of public events, says:

" ' "Who are the spokesmen now set up to thunder against Roosevelt on behalf of this congress whose dignity is injured? Tillman, who in his recent shame seems to have the sympathy and not the censure of all his colleagues; Foraker, whose Standard Oil smeared record has utterly discredited him everywhere except in congress; Tawney, proved a falsifier of public documents by his misquotation upon the floor of congress of a letter from the secretary of the treasury and his misstatement of facts with respect to an investigation and exposure in the bureau of engraving and printing.

" ' "It was the secret service and not the senate that took the action that sent Burton, of Kansas, to a convict's cell.

" ' "The 'land office ring' was common gossip in Washington. But congress took no steps to cleanse itself of the presence of Mitchell and Hermann, exposed and convicted of felony by the secret service which the present congress has crippled.

" ' "The senate saw nothing wrong in Senator Dietrich's lease of his private property to the government, though a grand jury did. The house considers it entirely proper for Fordney, of Michigan, to frame tariff schedules governing the profits of his private business.

" ' "Archbold's letters to Bailey do not affect the dignity of congress any more than the corporate connections of Aldrich, Platt, Depew, Gallinger and a score of others equally notorious.

" ' "If the American people felt the faintest hope that congress could be counted upon to check or to expel the 'unfit and dishonest' instead of elevating and honoring them, there would be no lack of the respect which the people would be only too glad to give.

" ' "But the object lessons have been too many. The patience of the people is exhausted. They approve what Roosevelt has done and they commend to congress the words of Townsend of Michigan, when he declared that if the members were seeking to preserve their reputations before the country it could not be accomplished by the resolution which he opposed.

" ' " 'The honor rests with us. No man, he said, can blacken our reputations. It lies wholly and entirely with us to make the record that will command respect among the people of the United States.' " ' "

By this article, the complaint alleged, the defendant charged at the time and meant, and was understood by the readers of the newspaper to charge at the time and to mean, that this plaintiff, while such member of congress, in the course of the performance of his duties as such member, had been proven and was a falsifier of public documents; that as such member of congress, and in the performance of his duties as such, this plaintiff had been guilty of wilfully and deliberately misquoting upon the floor of congress a letter from the secretary of the treasury, and which acts and conduct amounted to and were a falsification of public documents, and that this plaintiff was guilty of, and had been proven guilty of, gross misconduct, deception, and fraud in his public office of member of congress, and in the performance of his duties as such. The complaint contained also an allegation that the acts and conduct of said defendant in so publishing and circulating said false and libelous newspaper were actuated by malice and a

desire for revenge, in bad faith, with full notice and knowledge that the facts therein contained were false and untrue.

To this complaint defendant filed an answer, whereby it admitted the publication in one of its regular daily editions of the matter previously set forth, and that this plaintiff was referred to therein. The answer further set forth: Plaintiff, as chairman of the committee of appropriations of the national house of representatives, received a letter from the secretary of the treasury of the United States, to which he referred in a speech made in said house in the course of debate and discussion on said measure then pending in these words, namely: "Why, I have in my possession a letter from the secretary of the treasury, received a few days ago, in which he has pointed out to me the practice of the treasury department, whereby he himself admits that the provisions under which this appropriation is made have been violated year after year for a number of years in his own department." Defendant in good faith believed and believes that said statements of plaintiff misquoted, misstated, and misrepresented the contents and meaning of said letter, a copy of which was attached. In the course of said debate concerning a certain ink contract fraud and investigation in the bureau of engraving and printing, plaintiff used the following language: "That work was not done by the secret service men. That work was done by a clerk in the office, who has since been promoted in recognition and as a reward for that service." In truth and in fact said work was done by one of the secret service men named Moran, employed in the secret service division of said treasury department of the United States of America, all of which was well known to said plaintiff when he spoke said words. Defendant in good faith believed that thereby plaintiff intended to charge that the investigation was not done by any secret service men, nor by any employee or officer in the secret service division of the treasury department. Said defendant believed that the article which it had published was a "fair, just, and proper comment upon the acts and conduct of a public officer and public servant, the plaintiff herein, as well as upon the other public officers, servants and representatives therein mentioned and referred to." That the subject-matter and contents of the article were of great

public interest and importance in defendant's community; and that the defendant believed, felt, and knew that the article was circulated for the benefit of the public as matter of news. It was further alleged that the statement, "Tawney, proved a falsifier of public documents by his misquotation upon the floor of congress of a letter from the secretary of the treasury and his misstatement of facts with respect to an investigation and exposure in the bureau of engraving and printing," was true as therein stated.

The reply put in issue these defenses of truth and fair comment or privilege.

The defendant moved for judgment in its favor on the pleadings [on the grounds that it appeared upon the face of the pleadings that (1) the alleged libel was true; (2) plaintiff had no cause of action against the defendant; (3) the portion of the alleged libel which charges plaintiff with having misquoted a letter from the secretary of the treasury was true, as appeared from a comparison of plaintiff's speech with the letter itself, a copy of which was attached to the answer and admitted by the reply; (4) the portion of the alleged libel in which plaintiff was charged with making a misstatement with respect to the investigation of the bureau of printing was true, it appearing that Moran, the person referred to, was in fact an employee of the secret service division of the treasury department and such employee would ordinarily be called a secret service man; (5) the portion of the alleged libel in which plaintiff was charged with a misstatement of facts was true; (6) the alleged libel did not charge any crime or criminal offense; (7) the alleged libel was a fair comment and criticism upon the acts of a public official; (8) it appeared from the pleadings that prior to the publication similar statements about the plaintiff had been made by Theodore Roosevelt, then President of the United States, in an official message, that the matter was of public interest and the alleged libel was fair and temperate in tone and defendant had a right to express its opinion about the official conduct of plaintiff and not be subject to an action for libel, and (9) the alleged libel was simply a criticism which might reasonably be applied to a public official within the rule of Herringer v. Ingberg, 91 Minn. 71.]

The motion for judgment was granted, Kingsley, J., and from the judgment entered pursuant to the order for judgment, plaintiff appealed.   Reversed.

*Dunn & Carlson,* for appellant.

It is the settled law of this state that anything charging misconduct in office, want of official integrity, want of fidelity to a public trust, or which would tend to deprive him of his office is libelous per se. Larrabee v. Minnesota Tribune Co., 36 Minn. 141; Sharpe v. Larson, 67 Minn. 428; Martin v. Paine, 69 Minn. 482; Wilcox v. Moore, 69 Minn. 49.   It is equally well settled that to charge one with falsehood, with having lied or with being a liar, or falsifier, and the words may be used interchangeably, is libelous per se.   Trebby v. Transcript Pub. Co., 74 Minn. 84, 86; Byrne v. Funk, 38 Wash. 506; Monson v. Lathrop, 96 Wis. 386; Paxton v. Woodward, 31 Mont. 195; Over v. Schiffling, 102 Ind. 191.

*Morgan & Meighen,* and *A. U. Mayland,* for respondent.

Regardless of whether or not the article complained of is accurate, it is nevertheless not libelous per se.   Plaintiff cannot claim damages on the ground that in the article his name is used in connection with those of Senators Mitchell, Burton, Hermann, or the others named. Crashley v. Press Publishing Co., 179 N. Y. 27.   "Nothing is better settled than that much discommendatory language whether written or spoken is not actionable per se, because not calculated to do the person of whom it is published any injury appreciable or cognizable by the law." McDermott v. Union Credit Co., 76 Minn. 84.   "There has always been a distinction between publications relating to public and private persons as to whether they are libelous.   A criticism might reasonably be applied to a public officer which would be libelous if applied to a private individual."   Herringer v. Ingberg, 91 Minn. 71. The beneficial ends to be subserved by public discussion would in large measure be defeated if dishonesty must be handled with delicacy and fraud spoken of with such circumspection and careful and defer-

ential.choice of words as to make it appear in the discussion a matter of indifference.   Atkinson v. Detroit, 46 Mich. 341.

JAGGARD, J. (after stating the facts not within [ ] as above).

1. The initial question is whether the trial court erred in holding that as a matter of law the words used were not libelous per se.

A number of relevant principles are beyond controversy.   Published words may be defamatory per se; that is, defamatory without proof of special damage.   As to what constitutes such words, Mr. Justice Mitchell said, in Byram v. Aiken, 65 Minn. 87, 67 N. W. 807: "Written publications calculated to expose one to public contempt or ridicule, and thus induce an ill opinion of him, and impair him in the good opinion and respect of others, are libelous, although they involve no imputation of crime, and are actionable without any allegation of special damages."   "It is enough," said Weaver, J., in Morse v. Times Republican, 124 Iowa, 707, 715, 100 N. W. 867, 870, "if the printed article be such that its publication naturally tends to brand him with dishonesty or other conduct or characteristic deserving the contempt and reprobation of right-minded people."

More specifically, words charging misconduct in office, want of official integrity or fidelity to public trust, and words which tend to deprive an official of his office, are libelous per se.   State v. Norton, supra, page 99, 123 N. W. 59; Larrabee v. Minnesota Tribune Co., 36 Minn. 141, 30 N. W. 462; Sharpe v. Larson, 67 Minn. 428, 70 N. W. 1, 554; Martin v. Paine, 69 Minn. 482, at page 485, 72 N. W. 450.   And see sections 4269, 4916, 4917, R. L. 1905.   In the application of this rule it makes no difference what the nature of the employment is, provided it is lawful, or whether the conduct imputed is such as in itself the law will blame or not, provided it is inconsistent with the due fulfilment of what the party, in virtue of his employment or office, has undertaken.   2 Current Law, 718, and authorities referred to.

In determining whether the specified matter is libelous per se, two rules of construction are conspicuously applicable:   (1) That construction must be adopted which will give to the matter such a meaning as is natural and obvious in the plain and ordinary sense in

which the public would naturally understand what was uttered. (2) The published matter alleged to be libelous must be construed as a whole.

Defendant divides its argument that the matter was not libelous per se into two parts: Its first argument is based on this particular sentence: "Tawney, proved a falsifier of public documents by his misquotation upon the floor of congress of a letter from the secretary of the treasury and his misstatement of facts with respect to an investigation and exposure in the bureau of engraving and printing." This, it insists, asserts two facts: (a) That Tawney misquoted a certain letter; (b) That Tawney misstated certain facts. From the existence of these two facts, the writer of the article draws the conclusion that Tawney is "proved a falsifier of public documents." He concludes that "the opinion or conclusion that it [defendant] drew from these facts, cuts no figure. * * * If the article complained of simply read, 'Tawney is a falsifier of public documents,' an altogether different question would be here presented." The published matter was not libelous, but simply "discommendatory" (see McDermott v. U. C. Co., 76 Minn. 84 [78 N. W. 967, 79 N. W. 673]), and as such was not actionable. The pleasant path of euphemism was followed to its end: "All that can be said of it generally is that it imports intellectual unfairness, one-sidedness, partisanship, bigotry and the like." And this was re-inforced by the argument from inconvenience: "If to charge one with misquotation or misstatement of a fact were actionable per se, it would be unsafe to publish a newspaper at all, or to discuss any public question in a public way."

This reasoning is obviously unsound. Defendant eliminates the first charge that plaintiff was a falsifier of public records on the floor of congress, and attributes an innocent meaning to "misquotation" and "misstatement." The difficulty is that these words, "a falsifier of public documents," occur and are significant. They must be dealt with on the same principle which requires even headlines to be considered. Landon v. Watkins, 61 Minn. 137, 63 N. W. 615. The statement that plaintiff "falsified" was an integral part of the whole. If this were "opinionative," that does not tend to exonerate the defendant. Gendron v. St. Pierre, 73 N. H. 419, 62 Atl. 966; Prewitt v.

Wilson, 128 Iowa, 198, 103 N. W. 365, collecting cases at pages 367, 368, of 103 N. W. The words must be interpreted in their ordinary meaning. "A falsifier is one who falsifies or gives to a thing a deceptive appearance; a liar." Webster's Unab. Dict.; The Century Dict. "One who falsifies or deceives; a liar." Standard Dict.

The imputation of falsehood, which was here made, when published in writing, is libelous per se. Cooper v. Stone, 24 Wend. (N. Y.) 434, at page 441; Riley v. Lee, 88 Ky. 603, at page 611, 11 S. W. 713, 21 Am. St. 358; 25 Cyc. 255. Thus to charge a judge as a citizen with openly abandoning the principles of truth is libelous. Robertson, J., in Robbins v. Treadway, 2 J. J. Marsh. (Ky.) 540, 19 Am. Dec. 152. A fortiori, "when the lie is passed," a libel is committed. Colvard v. Black, 110 Ga. 642, 36 S. E. 80; Brooks v. Bemiss, 8 Johns. (N. Y.) 455, 456; Cooper v. Stone, supra. The charge of having falsified imputes a wilful wrong. Thus, to charge that a school teacher gave false information in respect to a matter about which it was her duty to give correctly all information, charges the giving of false information in consequence of a perverse will. Lindley v. Horton, 27 Conn. 58. The conclusion follows that the unmodified charge, published in a writing, that plaintiff, a member of congress, had falsified public documents on the floor of congress, was libelous per se. It imputed to plaintiff want of fidelity to public trust, grossly inconsistent with the due fulfilment of official duty, tended to brand him with intellectual dishonesty, to subject him to the contempt and reprobation of right-minded men.

Defendant, however, invokes authority to the effect that words susceptible of carrying a libelous or slanderous meaning may be deprived of that quality by association with other parts of the context. Thus to charge a man with false assertion may be shown by the context to mean to charge "that he reasons from false premises, or draws false conclusions from correct premises," and therefore not to be libelous. Walker v. Hawley, 56 Conn. 559, 16 Atl. 675. And see Labor Review v. Galliher, 153 Ala. 364, 45 South. 188; Urban v. Helmick, 15 Wash. 155, 45 Pac. 747 (wherein a "hog" appeared from the context to mean one who bought goods from a store in a town other than in his own town, and was held to be innocent.) It is

evident, however, that the matter is determined by the particular language used. Such words may or may not be deprived of their defamatory meaning, or they may or may not be intensified in that quality by such association. Thus for example in Cox v. Lee, L. R. 4 Ex. 284, it was held that "to charge a man with ingratitude is libelous; and such a charge may also be libelous, notwithstanding that the facts upon which it is founded are stated, and they do not support the charge." And Pigott, J., said, at page 291, "that the charge was not made in such a manner as to disprove it, but rather to add to it force and point; and much must always depend upon the attendant circumstances."

In the case at bar the specification that the defendant falsified by misquoting or misstating might be regarded as adding force and point to the charge. Such clauses are certainly not inconsistent with it, and they do not tend to negative the express allegation of wilful and deliberate wrong on the part of the defendant set forth in the complaint. They are not "an antidote to a bane." This is not a case where something to a man's credit is to be considered with something to his discredit. To say that a man is a thief is not freed from an objection by adding that he has taken one man's horse or kept another man's cow. But to say that a man is a thief because he has converted one man's horse and appropriated another man's cow is to aggravate the charge by specification. So to call a man a liar is not diminished in defamatory character by citing instances in which he has made misstatements. We conclude that the modifying clauses did not destroy the libelous character of the main charge and that this sentence was libelous per se.

With this view falls the argument from inconvenience, for under the view here adopted whether the charge of misquoting and misstating, alone, may or may not be made without liability in libel, is neither considered nor determined.

Defendant's second argument is that the remainder of the article excluding the particular sentence is not libelous. The use of plaintiff's name in connection with Senators Burton, Mitchell, and Hermann (who had all been charged or convicted of crime) was, according to defendant, rendered innocuous by Crashley v. Press Pub. Co.,

179 N. Y. 27, 71 N. E. 258. It was there held that to attach plaintiff's name to the coterie which surrounded him was not to impute to him knowledge of their defects or moral turpitude. That case concerns charges made about a revolutionary leader in Brazil which attributed "sordid interests to his crowd," but not to him. It is evident that neither principle nor the letter of this case serves to eliminate the sting of the particular association of names.

Whether, however, these other parts of the article, outside of the particular sentence previously considered, had a natural tendency to defame, it is really unnecessary to here determine. The question is not whether that article can be divided into two parts, and each of those parts so analyzed separately from each other that each would appear to be free from defamatory meaning. The article must be construed as a whole. The remainder of the article tended, not to destroy, but to increase, the natural defamatory character of the particular sentence previously considered. Due weight must, moreover, be given to plaintiff's formal allegations of the sense in which the words were used and understood. We conclude it was error to hold as a matter of law that the words were not libelous per se.

2. The truth of the charge did not appear as a matter of law on the face of the pleadings. With their truth in fact we are not concerned on this motion for judgment. It is elementary that, to make out the defense of truth in an action for libel, the plea in justification must be substantially as broad as the charge. The plea of truth must, moreover, not only extend to the entire language complained of, but must allege its truth in the sense imputed to it by plaintiff (Morse v. Times Republican Printing Co., 124 Iowa, 707, 100 N. W. 867); provided, of course, that such sense results from a reasonable construction. This agrees with the English rule that if, as here, the defendant pleads simply that the words were true without any reference to the innuendo, he must be prepared at trial to prove that those words were true in whatever sense it may be determined should be put upon them. Odgers, 181; Ford v. Bray [1894] 11 Times L. R. 32. Therefore a motion for judgment on the pleadings should not be granted, if the answer asserts a justification substantially less broad than the complaint charges, or in a sense different from that reasonably laid in the innuendo.

The first charge in the particular sentence previously quoted is not shown by the pleadings to have been true.. It distinctly charges plaintiff with having "misquoted." The truth of charge was not made out. As the trial court said: "This does not on its face purport to be a quotation from the letter referred to, nor does it say without qualification that the secretary of the treasury admitted specifically that the practice of that department had been in violation of law year after year for a number of years. It, on its face, purports to be the plaintiff's conclusion drawn from the letter that it was in effect an admission that such practice had been in violation of law."

If, however, what was meant to be charged was, not that plaintiff had misquoted, but that he had "misstated or misrepresented," or had misconstrued the letter, then the defendant failed, on the pleadings, to make out the defense of truth to that charge; for, in addition to setting forth the words themselves, the complaint further alleges that defendant charged plaintiff with deliberately and wilfully falsifying public documents on the floor of congress. The letter set forth in the answer may or may not have warranted the inference plaintiff had drawn. This there is no occasion to now consider or determine; for, upon the assumption that the letter would not justify plaintiff's conclusion, it still does not appear that plaintiff had misconstrued the letter with any but an innocent intention. The truth of what defendant published, in the sense imputed to it by the complaint, was therefore necessarily not made out by the answer. So in Wernher Co. v. Markham, [1901] 18 Times L. R. 143, [1902] 763, the defendant called plaintiffs "thieves and swindlers," and pleaded that the words were true in substance and in fact. It was there attempted to say that in using the words "thieves and swindlers" he did not mean to impute criminal dishonesty. This was held insufficient.

This conclusion is the more readily reached, inasmuch as the plaintiff's argument that he had truthfully stated the facts of the letter rests to an indefinite extent on matters which are not in the record. How far these extrinsic facts are the necessary and proper objects of proof, and how far this court will take judicial notice of such matters, or of other matters involved therewith in defendant's argument on that point, are questions naturally arising upon trial, and are best

decided there. It may not be impossible to correctly dispose of them here, but the determination would be likely to be academical, and would be obviously unsatisfactory.

In this view it would be superfluous to inquire into the truth of the charge made with respect to the investigation and exposure in the bureau of engraving and printing, or into the extent to which similar reasoning concludes that controversy; for, upon the assumption that this part of the charge was true in fact, the justification as a whole could not be as broad as the charge.

3. Nor has the defendant made out the defense of qualified privilege or of fair comment as a matter of law. On this subject, there is particular confusion and disagreement. 24 Law Q. Rev. 235. The uncertainty begins at the threshold. It is frequently, perhaps generally, said that a libelous publication is actionable, unless justified or privileged; that privilege may be absolute or qualified; and that newspaper comment on public men is a qualified privilege. It is, however, also insisted that this does not mean that such words are published on a privileged occasion in any strict sense of the term (see authorities collected in 25 Cyc. 401, note 77), but that comments on matters of public interest should be treated as a separate defense, and not included as a species of the genus general privilege. Odgers, L. & S.

It is not necessary, however, that this controversy should be here determined, for the complaint charges defendant with express malice. This must be treated as admitted for the purposes of the present motion. In any view, the defense under these circumstances was not made out; for it is clear that the right to comment and to criticize, viewed as a separate defense, or viewed as an instance of qualified privilege, does not exist where express malice is shown.

The English rule is: "In an action of libel, where the defense is that the writing complained of is fair comment upon a matter of public interest, evidence that the defendant was actuated by malice towards the plaintiff is admissible, upon the ground that comment which is actuated by malice cannot be deemed fair on the part of the person who makes it, and, therefore, proof of malice may take a criticism that is prima facie fair outside the limits of fair comment."

Thomas v. Bradbury, L. R. 2 K. B. 627 (1906). The American rule is to the same effect. See 56 O. S. or 48 N. S. U. of P. A. L. R. and L. R. 470. "A communication," said Gillfillan, C. J., in Lowry v. Vedder, 40 Minn. 475, 42 N. W. 542, "is not entitled to the character of privileged when it is made for malice." And see Quinn v. Scott, 22 Minn. 456, 457; Sherwood v. Powell, 61 Minn. 479, 63 N. W. 1103, 29 L. R. A. 153, 52 Am. St. 614; Martin v. Paine, 69 Minn. 482, 72 N. W. 450; Hebner v. Great Northern Ry. Co., 78 Minn. 289, 80 N. W. 1128, 79 Am. St. 387; Mertens v. Bee Pub. Co., 5 Neb. (Unof.) 592, 99 N. W. 847; Morse v. Times Republican Printing Co., 124 Iowa, 707, 100 N. W. 867, cf. Vial v. Larson, 132 Iowa, 208, 109 N. W. 1007. Generally, see 25 Cyc. 411. We refrain from further accumulation of authorities on so elementary a proposition, beyond pointing out that, even by the more liberal rules as to the justification of newspaper comments in force, express malice destroys the right to criticise. Briggs v. Garret, 111 Pa. St. 404, 2 Atl. 513, 56 Am. 274. In this view it is unnecessary to consider the further contention of the truth or untruth of the charges in fact. See 24 Law Q. Rev. 235.

Reversed.