**Robert UTECHT, Appellant,**

v.

**SHOPKO DEPARTMENT STORE, Respondent.**

**No. 82–166.**

Supreme Court of Minnesota.

Oct. 8, 1982.

Willenbring, Lickteig & Dahl and Timothy D. Clements, Cold Spring, for appellant.

Donohue, Rajkowski & Hansmeier, St. Cloud, for respondent.

SCOTT, Justice.

Plaintiff Robert Utecht appeals from a summary judgment in favor of defendant Shopko Department Store in this suit for libel. The primary issue on appeal is whether there are genuine issues of material fact concerning the defamatory nature of the communication and Shopko's privilege to publish it. We conclude that there are and, therefore, reverse and remand for further proceedings.

In early July 1979 Kathy Utecht, plaintiff's wife, lost her checkbook and several credit cards including a Shopper's Charge card. She called various local retailers, including Shopko, and informed them of the loss in hopes of preventing unauthorized use of the credit cards. In August 1979 plaintiff's brother-in-law informed him that while in the check-out lane in Shopko, he had observed a notice posted on the cash register reading "Shopper's Charge—Robert Utecht—Do Not Accept." Plaintiff called Shopko and demanded immediate removal of any such signs. He subsequently went to the store where he found one sign, handwritten in blue ink on a 3 inch by 5 inch index card, in a trash barrel.

Angry and upset about possible damage to his reputation, plaintiff sought damages in conciliation court. He was awarded $1,000 and Shopko removed the case to county court. Plaintiff then filed a complaint alleging damages in excess of $50,000. Upon motion, the county court transferred the action to the district court because the claim exceeded its jurisdictional limit. Shopko moved for summary judgment. The motion was denied. On the morning of trial Shopko renewed its motion and, this time, the trial court granted it on the dual grounds that the communication was not defamatory as a matter of law and that it was privileged as a matter of law.

We have often cautioned that summary judgment is not a substitute for trial. 2 J. Hetland & O. Adamson, Minnesota Practice, Civil Rules Annotated 563 (1970). In libel cases a publication may be defamatory on its face; or it may carry a defamatory meaning only by reason of extrinsic circumstances. The question whether a claimed defamatory innuendo is reasonably conveyed by the language used is for the court to determine. *Marudas v. Odegard*, 215 Minn. 357, 10 N.W.2d 233

(1943). If the words are capable of the defamatory meaning, it is for the jury to decide whether they were in fact so understood. *Gadach v. Benton County Co-op Association,* 236 Minn. 507, 53 N.W.2d 230 (1952). We cannot agree with the trial court that the notice posted by Shopko was not reasonably susceptible of a defamatory meaning. The circumstances in which the notice was seen by the public necessarily prompted speculation as to why the card was not to be accepted. Loss or theft are possible explanations but poor credit is an at least equally likely alternative. The innuendo that one is a deadbeat is clearly defamatory and a jury should determine whether that meaning was the one actually conveyed.

Shopko argues that any fact issue regarding the defamatory nature of its notice is nonetheless not material because the communication was privileged. There are two types of privileges, absolute and qualified. Both are potentially applicable here. The claim of absolute privilege is based on plaintiff's consent to the publication. While plaintiff concedes that he consented to Shopko's informing its cashiers not to accept his credit card, it is undisputed that he did not expressly agree to the method used. There is, therefore, a factual question for a jury as to whether the publication was within the scope of the consent, *i.e.,* whether Shopko reasonably interpreted plaintiff's request. The result is the same with respect to the claim of qualified privilege. It constitutes a defense only when the communication is made in a reasonable manner and for a proper purpose. *Hebner v. Great Northern Railway Co.,* 78 Minn. 289, 80 N.W. 1128 (1899). Plaintiff here alleges that the method used to communicate information regarding the credit card to the cashiers was unreasonable under the circumstances because it excessively published the information. The question whether a qualified privilege has been defeated by abuse is one for the jury. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252 (Minn.1980).

Plaintiff also contends that the trial court erred by denying his motion to amend the complaint to assert a claim for punitive damages. Whether to allow an amendment is committed to the trial court's discretion. *Dale v. Pushor,* 246 Minn. 254, 75 N.W.2d 595 (1956). Minn.Stat. § 549.20 (1980) provides that punitive damages are allowable in civil actions "only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others." All of the discovery evidence before the court indicates that Shopko was, at most, negligent. The trial court, therefore, did not abuse its discretion by refusing to permit the amendment.

Affirmed in part; reversed and remanded in part.

COYNE, J., took no part in the consideration or decision of this case.

PETERSON, Justice (dissenting).

I respectfully disagree with the majority opinion and would affirm the grant of summary judgment.

Two alternative findings supported the lower court's disposition of the case through summary judgment. The lower court found the posted cashier's notice ("Shopper's Charge—Robert Utecht—Do Not Accept") not capable of a defamatory meaning. Although I am inclined to agree with the lower court—the notice does not seem capable of bearing the defamatory meaning attributed to it by plaintiff—I defer to the majority on this issue. A jury should decide what meaning is actually taken.

More important to this dissent is the issue of abuse of a qualified privilege. Both parties and the lower court agreed: Shopko had a qualified privilege to communicate the loss of plaintiff's credit card to its cashiers. As the majority points out, plaintiff alleged abuse of the qualified privilege through excessive publication. The lower court found no abuse of the qualified privilege. The majority would allow the jury to consider the issue.

I dissent from the majority on this point: the lower court could rule as a matter of law that no abuse of the qualified privilege occurred through excessive publication. The Restatement (Second) of Torts § 619(2) (1977) suggests the rule: "Subject to control of the court whenever the issue arises, the jury determines whether the defendant abused a conditional privilege." But importantly, the comments to the subsection add: "These questions are for the jury to determine *unless the facts are such that only one conclusion can reasonably be drawn.*" *Id.,* comment on subsection (2) (emphasis supplied). If the facts of the instant case point to only one conclusion—that Shopko used a reasonable means to convey the message not to accept the Utecht credit card—then the judge may decide the issue of abuse of a qualified privilege. *Id.*

Shopko did not abuse the qualified privilege it had through excessive publication. This conclusion follows from an understanding of the excessive publication doctrine:

§ 604. Excessive Publication

One who, upon an occasion giving rise to a conditional privilege for the publication of defamatory matter to a particular person or persons, knowingly publishes the matter to a person to whom its publication is not otherwise privileged, abuses the privilege unless he reasonably believes that the publication is a proper means of communicating the defamatory matter to the person to whom its publication is privileged.

*Id.,* § 604. The comments to this section are especially important in determining the reasonability standard. (In the present case, the reasonableness of the posting of the notice by Shopko is to be ascertained.) Comment a suggests:

a. Ordinarily, a privilege is abused by speaking defamatory words in the presence of persons whose knowledge of them is unnecessary to the protection of the interest in question. However, this is not true when the publication to those persons is reasonably incidental to the communication of the defamatory matter to the person whose knowledge is reasonably believed to be necessary or useful for the protection of the interests. *In many cases, the communication, to be effective, must be made at a given time and place even though third persons are present who are likely to overhear it.* * * *

*Id.,* comment a (emphasis supplied).

Comment b explores further the reasonability standard:

b. Often the only practicable means of communicating defamatory matter involves a probability or even a certainty that it will reach many persons whose knowledge of it is of no value in accomplishing the purpose for which the privilege is given. In this case, the publication is not excessive or an abuse of the privilege, if the importance of the interest involved, the gravity of the harm threatened to it *and the inconvenience of any other means of communication make the publication reasonable.* * * *

One privileged to publish defamatory matter may, without abuse of the privilege use a method of communication that involves an incidental publication of the defamatory matter to persons to whom he is not otherwise privileged to publish it, *if the method, although not the only way in which the information can be effectively communicated, is customary and sanctioned by business or other necessity.* * * *

*Id.,* comment b (emphasis supplied).

The facts of the present case demonstrate the reasonability of Shopko's actions. Mrs. Utecht called Shopko, asking them not to accept the lost credit cards. In a deposition, Mrs. Utecht related the information she told Shopko:

Q Did you know anybody at Shopko?

A Personally?

Q Yes.

A No.

Q Okay. So, you just called up, I take it. Did you get Mr. Davis right away?

A I don't remember.

Q Okay. Well, tell me what you told Mr. Davis?

A The same as I told the other stores, our cards had been lost, not to accept any charge on our card.

Q   Okay.   What did this Mr. Davis—the person you talked to—indicate when you told him that?

A   "Okay."

Q   Okay.   Again the purpose for contacting Shopko, the same reason you contacted the other stores?

A   Yes.

\*      \*      \*      \*      \*      \*

Q   [T]hat was the basic idea why you contacted them, so they didn't accept it?

A   Yeah.

Shopko used a means it thought reasonable to communicate the fact of plaintiff's credit card loss: a notice on the cash register.   To be sure, Shopko might have employed some other means of conveying the information, perhaps by putting the information on a clipboard, or by displaying only a credit card number.   But these methods do not convey the message so clearly, quickly or efficiently to cashiers as the method chosen.   If the Utechts were serious about not having their credit card accepted, one cannot fault Shopko for following through on this request.   Its method would work.

The lower court judge had all the facts and circumstances of the case before him when he granted summary judgment to respondent.   The parties do not debate the content of the sign, nor is the positioning of the sign in dispute.   Absent any controversy as to the facts of this case, the court's determination—that the qualified privilege was not abused—is justified.   The facts support only one conclusion: Shopko complied with a customer request in a reasonable commercial manner by posting the cashier notice.   The lower court reached this conclusion after a full review of the facts before it.   This court should affirm the judgment of the lower court.

KELLEY, Justice (dissenting).

I join the dissent of Justice Peterson.