Thomas SCHLIEMAN, Appellant,

v.

GANNETT MINNESOTA BROADCASTING, INC., n/k/a Multimedia Cablevision, Inc., d/b/a Kare TV, et al., Respondent.

No. C0–01–935.

Court of Appeals of Minnesota.

Dec. 26, 2001.

Patrick T. Tierney, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, for appellant.

Thomas Tinkham and Amy Katz Rotenberg, Dorsey & Whitney L.L.P., Minneapolis, for respondent.

Considered and decided by LANSING, Presiding Judge, KALITOWSKI, Judge, and HANSON, Judge.

## OPINION

LANSING, Judge.

In this defamation action against KARE TV, St. Cloud Police Officer Thomas Schlieman challenges the district court's instructions on the elements of defamation. Schlieman alternatively contends that the three statements at issue are defamatory as a matter of law. By notice of review, KARE TV contends that the district court erred in holding that the three statements are capable of supporting a cause of action for defamation. We affirm in part, reverse in part, and remand.

## FACTS

KARE TV aired an investigative report on a police-citizen shooting in St. Cloud. Three statements broadcast in that report are the nucleus of this defamation action. St. Cloud Police Officer Thomas Schlieman testified that he was dispatched to Kevin Hartwig's St. Cloud home on a 911 call. As he approached Hartwig's home, Schlieman encountered Hartwig covered with blood, with a knife protruding from his chest. According to Schlieman, Hartwig removed the knife and, while making slashing motions and screaming loudly, charged at Schlieman; Schlieman backed up and fell onto the hood of a parked car; as Schlieman was lying on the car hood, Hartwig continued to charge at him. Schlieman fired his gun at Hartwig, fatally wounding him.

Michelle Simpson, Hartwig's neighbor and the only eyewitness to the shooting, testified consistently with Schlieman's account of the events. Simpson spoke with Dennis Stauffer, a reporter with KARE TV, shortly after the incident. According to Simpson, she told Stauffer that Hartwig had come out of the house screaming and with his arm raised in an attempt to stab Schlieman. Simpson gave a similar statement to police indicating that Hartwig was trying to stab Schlieman, that Hartwig was "screaming like he was in a rage," and that Schlieman was acting in self-defense when he shot Hartwig. Jason Melby, also a neighbor, witnessed the events leading up to the shooting but not the shooting itself. Melby declined to give a statement to Stauffer. Melby's testimony on the events he witnessed was consistent with Simpson's and Schlieman's testimony.

After speaking with Simpson, Stauffer appeared on the 6:00 p.m. KARE TV newscast. Stauffer and KARE TV news anchor, Pat Miles, made the following statements about the shooting of Hartwig:

[Miles] [W]hile police say it was self defense, KARE 11's Dennis Stauffer is live in St. Cloud with conflicting information from neighbors.

[Stauffer] * * * A man police say has no history of arrest or mental illness reportedly provoked his own death. But there's some disagreement over exactly what happened. * * *

* * * *

[Stauffer] Today friends and neighbors left flowers where Hartwig was killed and declined to speak on camera, but two people say they witnessed the shooting and that Hartwig was not being aggressive.

Stauffer testified that the only person who had given him information about the shooting was Simpson and that the "two people" that he was referring to in the broadcast were Simpson and Melby. Stauffer and John Drilling, a cameraman who was with Stauffer when he talked to Simpson, both testified that Simpson told Stauffer the shooting didn't have to happen and that Hartwig wasn't being aggressive.

Six months after the broadcast, Schlieman brought this action against Stauffer and KARE TV alleging counts of defamation and defamation by implication. KARE TV and Stauffer moved for summary judgment. The district court granted summary judgment on the defamation-by-implication claims, reasoning that this cause of action was not available to Schlieman because he is a public official. Consequently, the court excluded from trial the statements that Schlieman alleged were defamatory because of juxtaposition and omission. The district court allowed the defamation claims based on the two statements by Stauffer and the statement by Miles to proceed to trial.

Following the testimonial portion of the jury trial, the district court instructed the

jury on the elements of a defamation action brought by a public official. The district court provided the jury with a five-question special-verdict form submitted by Schlieman's attorney. The questions, in sequence, asked whether any of the three statements were defamatory; whether the statements were "of and concerning" Thomas Schlieman; whether the statements were false; whether the statements were made with actual malice, and the amount of damages, if any, sustained by Schlieman. The special-verdict form instructed the jury that, unless it answered the first question "yes," it should not answer the remaining questions. The jury answered the first question "no" and did not answer the remaining questions.

Schlieman moved for a new trial, arguing that the district court erred by including in the elements of defamation an instruction on defamation by implication, instructing the jury that the statement must "actually refer[ ] to the plaintiff," and submitting the question of the defamatory nature of the statements to the jury. The district court denied Schlieman's motion for a new trial. Schlieman appeals the denial of his new-trial motion and KARE TV, by notice of review, challenges the partial denial of its motion for summary judgment.

## ISSUES

I.   Did the jury instruction misstate the elements of a defamation action brought by a public official?

II.  Were the three statements defamatory as a matter of law?

III. Was KARE TV entitled to summary judgment because the three statements were incapable of conveying a defamatory meaning?

## ANALYSIS

### I

We review jury instructions to determine whether, taken as a whole, they misstate or confuse a principle of law applicable to the case. *Lindstrom v. Yellow Taxi Co.*, 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974). In general a jury charge should affirmatively set forth the law that applies and avoid the express exclusion of a nonapplicable principle of law. *Nubbe v. Hardy Cont'l Hotel Sys.*, 225 Minn. 496, 502–03, 31 N.W.2d 332, 336 (1948). The district court has latitude in the structure and language of the jury charge and will not be reversed simply because one of the parties prefers other language. *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986); *Seivert v. Bass*, 288 Minn. 457, 467, 181 N.W.2d 888, 894 (1970). But if an issue is submitted to the jury on an erroneous instruction and it does not appear as a matter of law that the jury's determination was correct regardless of the instruction, then the court should grant the objecting party a new trial. *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 660 (Minn.1987).

### Defamation of a Public Official

To prevail in a defamation action, a public official must prove that the designated statements were false, the statements were published, the statements conveyed a defamatory meaning, the statements were "of and concerning" the official, and the publisher acted with reckless disregard for the truth or had a high degree of knowledge of the statements' probable falsity. *See Toney v. WCCO Television*, 85 F.3d 383, 386 (8th Cir.1996) (listing elements of defamation under Minnesota law); *Diesen v. Hessburg*, 455 N.W.2d 446, 452 (Minn.1990) (discussing additional element of actual malice applicable to public officials).

Schlieman's challenges to the jury instructions are directed at the "defamatory-meaning" element and the "of-and-concerning" element. These two elements together with the "false" and "published" elements have developed from the common law of defamation. In cases involving the defamation of public officials or public figures or communication of public concern, the fifth element incorporates constitutional protections. The United States Supreme Court constitutionalized common law defamation in *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964), when it held that a public official must prove "that the [defamatory] statement was made with 'actual malice'—that is, with knowledge that it is false or with reckless disregard of whether it was false or not." *Id.* at 279–80, 84 S.Ct. at 726. This constitutional actual-malice requirement grows out of our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.* at 270, 84 S.Ct. at 721 (citation omitted).

■ Motivated by similar First Amendment concerns, the Minnesota Supreme Court has extended the protection for matters of public concern by holding that an allegedly "false implication" arising out of true statements is generally nonactionable in defamation by a public-official plaintiff against a news medium. *Diesen*, 455 N.W.2d at 451–52. Applying Minnesota defamation law to a county attorney's claim against a Duluth-area newspaper, *Diesen* held that a public-official plaintiff could not base a defamation cause of action on true statements that, because of the particular juxtaposition of the statements

or the omission of particular facts, became false. *Id.* at 451–52.

*Diesen* is a plurality opinion in which three supreme court justices concluded that when the challenged statements are true, a public official may not prove falsity by implication. *Id.* at 451–52. Two justices concurred in the reversal but based their decision on different grounds. Two justices dissented. The configuration of the *Diesen* court injected some doubt into whether the plurality opinion commanded a majority in rejecting a public official's right to bring a defamation-by-implication action. *See Conroy v. Kilzer*, 789 F.Supp. 1457, 1460–61 (D.Minn.1992) ("Given the fragmentation of the *Diesen* court, it is difficult to state with certainty Minnesota's rule regarding libel by implication." (citation omitted)). Despite the splintered nature of the opinion, *Diesen* has been interpreted as foreclosing a defamation-by-implication cause of action for public officials. *Toney*, 85 F.3d at 390 (assuming the plurality opinion represented the views of a majority of the court); *see* C. Thomas Dienes & Lee Levine, *Implied Libel, Defamatory Meaning, and State of Mind: The Promise of New York Times Co. v. Sullivan*, 78 Iowa L.Rev. 237, 306 (1993) (categorizing *Diesen* as a "wholesale judicial rejection of the implied libel cause of action").

The *Diesen* rejection of defamation by implication is consistent with First Amendment principles that guarantee a free press. It reaffirms the body of Minnesota case law that provides that "true statements, however disparaging, are not actionable." *Stuempges v. Parke, Davis & Co.* 297 N.W.2d 252, 255 (Minn.1980). *Diesen* also avoids the difficulty of defining what is being implied, with the attendant problem that "the implication varies with the implicator." *Diesen*, 455 N.W.2d at 455 n. 1 (Simonett, J., concurring). And

significantly, *Diesen* spares Minnesota courts the challenging task of adapting the constitutional-malice standard to statements that are true on their face and false only by implication.

■ But *Diesen* is a narrowly focused holding that applies to only one type of public-official defamation action—an action that attempts to establish defamation through false implication from true statements. *Diesen,* 455 N.W.2d at 452. Contrary to KARE TV's argument, *Diesen* does not change the basic components of public-official defamation law in cases that do not involve defamation by implication. *See Toney,* 85 F.3d at 387 (*Diesen's* rejection of defamation by implication does not discard Minnesota's well-settled law that false statements nondefamatory on their face but capable of an "implied" defamatory meaning are actionable defamation); *Conroy,* 789 F.Supp. at 1461–62 (when a claim is based on false statements, rather than true statements that allegedly give rise to false implications, there is no reason to apply the tort of libel by implication; the plaintiff may sue under a straight libel theory).

■ Thus, *Diesen* does not modify the general principle that courts must interpret the defamatory-meaning element of a defamation action in light of the context surrounding the alleged defamatory statements. *See Utecht v. Shopko Dep't Store,* 324 N.W.2d 652, 653–54 (Minn.1982) (noting that a publication may convey a defamatory innuendo); *Jadwin v. Minneapolis Star & Tribune Co.,* 390 N.W.2d 437, 443 (Minn.App.1986) ("The defamatory character of any particular statement must be construed in the context of the article as a whole." (citation omitted)). Context is critical to meaning because a false statement that is defamatory on its face may not be defamatory when read in context, and a statement that is not defamatory on its face may, in fact, be defamatory when read in context. *See Hunter v. Hartman,* 545 N.W.2d 699, 706 (Minn.App.1996) ("The context of a remark * * * may make an otherwise defamatory comment protected hyperbole." (citations omitted)), *review denied* (Minn. June 19, 1996); *Chapin v. Knight-Ridder, Inc.,* 993 F.2d 1087, 1098 (4th Cir.1993) ("A magnifying glass is no aid to appreciating a Seurat, and the pattern of a complex structure is often discernable only at some distance.").

### Defamatory Meaning

■ It is on these principles that we evaluate the correctness of the district court's instruction on the defamatory-meaning element. Over objection, the court instructed the jury:

> In considering whether a statement is defamatory as to the plaintiff, you must not consider whether the statement is an implication based upon the juxtaposition of those statements or the omission of other facts. Here you may consider only whether the defendants published a false and defamatory statement which actually refers to the plaintiff.

Initially, the instruction seems merely confusing in its attempt to exclude defamation by implication. But in three ways the instruction results in a prejudicial misstatement of the substantive law.

First, the instruction creates confusion because the action Schlieman was permitted to try to the jury was not a defamation-by-implication action based on statements that are true on their face and false by implication, but a straight defamation action in which he sought to prove that the statements were false and conveyed a defamatory meaning. The statements that Schlieman alleged were false by implication were dismissed from this action by the summary judgment order; Schlieman's tri-

able cause of action was only for defamation. The *Diesen* exclusion is not relevant and injects considerable confusion into the question of what "juxtaposition" of statements or "omission of other facts" might mean as applied to the alleged defamatory statements.

▮▮ Second, the instruction is a misstatement of the essential holding of *Diesen*. *Diesen* held that a jury was not permitted to rely on the juxtaposition or the omission of facts to find that the statements at issue were *false;* it did not announce a new definition of *defamatory meaning* that is contingent on juxtaposition or omitted facts. Applying the *Diesen* constrictions on juxtaposition and omitted facts to the defamatory-meaning element instead of the falsity element distorts *Diesen* and results in a misstatement of the law. While it is true that Schlieman's attorney expressed an opinion that the language on juxtaposition and omission was less troublesome in the defamatory-meaning element than in the of-and-concerning element, he did not waive his continuing objection to including the juxtaposition and omission language in any part of the jury instructions.

▮▮ Third, and most significantly, restricting the jury's consideration as part of the defamatory-meaning element rather than the falsity element resulted in an instruction that told the jury they could not consider all contextual evidence in determining whether any of the statements had a defamatory meaning. In determining whether a communication is defamatory, words must be construed in context. *See Jadwin v. Minneapolis Star and Tribune Co.*, 367 N.W.2d 476, 492 (Minn.1985) (citing Restatement (Second) of Torts § 563 comment d (1976)). The instruction's restriction on implication through juxtaposition or omitted facts communicated that they could not take into account the statements preceding and following the alleged defamatory statement—the context of the statement.

The instruction the jury received is contrary to the "defamatory communication" instruction suggested by the Minnesota Jury Instruction Guide. *See* 4 *Minnesota Practice*, CIVJIG 50.10 (1999). Civil Jury Instruction 50.10 recognizes that context is to be taken into account when proving defamatory meaning. It suggests that when defamatory meaning is not apparent on its face, the jury should be instructed that it can take into account whether the omission of certain facts created a defamatory meaning, whether the linkage of statements created a defamatory meaning, and whether the statement is an opinion that is based on defamatory facts. The jury instruction given in this case expressly precluded the jury from considering these factors.

The restriction was emphasized by the court's specific and differing instruction that with respect to the falsity element and the of-and-concerning element, the jury could consider contextual evidence. Finally, the jury instruction permitted KARE TV's counsel to argue effectively that the jury could not consider context when determining whether the statements had a defamatory meaning.

KARE TV argues that the instruction was necessary as a cautionary instruction because Schlieman had interjected the "implication" concept into the trial and the jury needed to be advised that this cause of action was not available to Schlieman as a public official. The record does not support that argument. Implication was first mentioned by KARE TV's counsel—during the opening statement—and the recurring references to implication are primarily by KARE TV, not Schlieman.

The special-verdict form compounded the confusion because it is oddly sequenced. We recognize that the verdict follows the form recommended in CIVSVF 50.93, but it is confusing to ask first whether the statements were "defamatory." *See* 4 *Minnesota Practice*, CIVSVF 50.93 (1999). Asking whether the statements were defamatory encompasses the entire cause of action rather than only the defamatory-meaning element and appears to subsume the questions on the remaining elements.[1] And by making the answers conditional rather than independent, the negative answer on the first question forces a new trial when a negative answer on one of the other dispositive questions might have resolved the claims.

The jury instruction on defamatory meaning erroneously injected a standard that did not apply to the cause of action, misstated the standard by applying it to the wrong element, and prevented the jury from applying the correct standard. Thus, the jury instruction was an inaccurate statement of the law that prejudicially restricted the jury's determination of whether the statements conveyed a defamatory meaning, and we reverse and remand to the district court for a new trial. Because we remand for a new trial we do not consider Schlieman's claim that the evidence is insufficient to support the verdict.

### Of and Concerning

■ Schlieman's counsel also objected to the jury instruction on "of and concerning" that limited consideration to statements that actually refer to the plaintiff:

Here you may consider only whether the defendants published a false and defamatory statement which actually refers to the plaintiff.

Schlieman argues that by using the phrase "actually refers," the instruction erroneously led the jury to believe that the broadcast must literally identify Schlieman by name to satisfy the "of-and-concerning" element.

■ Jury instructions must be viewed as a whole to determine whether they fairly and adequately explain the law of the case. *Moosbrugger v. McGraw–Edison Co.*, 284 Minn. 143, 158, 170 N.W.2d 72, 81 (1969). After the district court gave the instruction that the defamatory statement must "actually refer[ ]" to the plaintiff, the court further instructed:

A statement is "of and concerning" the plaintiff if, when read in the context of the entire publication, it refers to the plaintiff.

This instruction adequately reflects governing law on the "of and concerning" element of the defamation cause of action. *Brill v. Minnesota Mines*, 200 Minn. 454, 458, 274 N.W. 631, 633 (1937) ("Defamatory words, to be actionable, must refer to some ascertained or ascertainable person and that person must be the plaintiffs."); *see* Dan B. Dobbs, *The Law of Torts*, § 405 at 1134–35 (2000) ("A defamatory publication is actionable only by the person or persons to whom recipients reasonably or correctly believe it refers.") (citations omitted). The court did not err in giving this instruction.

### II

■ Schlieman alternatively argues that the district court erred in submitting the defamatory-meaning issue to the jury because the statements were false statements about Schlieman's business, trade,

---

1. The more appropriate sequence for a special-verdict form in a public-official case might be (1) was the statement of and concerning plaintiff, (2) was the statement false, (3) did the statement convey a defamatory meaning as to the plaintiff, (4) was the statement published?

or professional conduct and thus were defamatory per se. Schlieman's argument correctly apprehends that defamatory statements about a person's business, trade, or professional conduct are defamatory per se. *See Becker*, 401 N.W.2d at 661 (citing *Anderson v. Kammeier*, 262 N.W.2d 366, 372 (Minn.1977)). But it misapprehends the effect of this classification. "Defamatory per se" means that damages are presumed and thus recoverable without proof of actual harm to reputation. *Becker*, 401 N.W.2d at 661.

Because "defamatory per se" defines a rule of damages, not of defamatory meaning, the jury retains the ultimate responsibility for determining whether statements that relate to a person's business, trade, or professional conduct are, in fact, defamatory. *See Jadwin*, 390 N.W.2d at 443 (noting that the court determines whether words are reasonably capable of carrying a defamatory meaning but the jury decides whether the statements do in fact have a defamatory meaning). The district court correctly rejected this argument.

## III

■ By notice of review, KARE TV argues that the district court erred in partially denying KARE TV's motion for summary judgment because the statements at issue are incapable of conveying a defamatory meaning. Minnesota defamation law divides statements into three categories: those that are defamatory on their face, those that could not reasonably convey a defamatory meaning, and those that are reasonably susceptible to a defamatory meaning as well as an innocent one. *Church of Scientology v. Minnesota State Medical Ass'n Found.*, 264 N.W.2d 152, 155 (Minn.1978).

■ The district court makes an initial determination of whether the statements are reasonably capable of carrying a

defamatory meaning. *Utecht*, 324 N.W.2d at 653. Because this determination is made as a matter of law, it is subject to de novo review. *Frost-Benco Elec. Ass'n v. Minnesota Pub. Util. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). If the statements are capable of carrying a defamatory meaning, then the jury must determine whether the statements were, in fact, defamatory. *Utecht*, 324 N.W.2d at 654.

■ A defamatory statement is one that harms the plaintiff's reputation and lowers him in the estimation of the community. *Jadwin*, 390 N.W.2d at 443. Allegations that a public official is lacking in integrity are actionable. *Hammersten v. Reiling*, 262 Minn. 200, 206–07, 115 N.W.2d 259, 264 (Minn.1962). Publishers are not permitted to disseminate "false and malicious statements charging a public official with crimes or misconduct in office." *Id.* at 207, 115 N.W.2d at 264 (citations omitted). Minnesota has long recognized that "words charging misconduct" in duty, "want of official fidelity," or "want of * * * integrity" in official capacity give rise to defamation. *Tawney v. Simonson, Whitcomb & Hurley Co.*, 109 Minn. 341, 348, 124 N.W. 229, 232 (1909) (citations omitted). Consequently a false statement that conveys the allegation that a police officer unjustifiably shot a citizen may, in fact, be defamatory.

■ KARE TV argues that the ambiguity of the statements makes them incapable of carrying a defamatory meaning. In support of its proposition, KARE TV cites *Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560 (8th Cir.2001) and *Price v. Viking Penguin, Inc.*, 881 F.2d 1426 (8th Cir.1989). We read *Campbell* and *Price* as primarily addressing the issue of falsity rather than the issue of defamatory meaning. *Campbell*, 255 F.3d at 567–69; *Price*, 881 F.2d at 1443–45.

But to some degree the issues are related. Only statements that present or imply the existence of fact that can be proven true or false are actionable under state defamation law. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18–20, 110 S.Ct. 2695, 2705–06, 111 L.Ed.2d 1 (1990). Thus, if it is plain that the speaker is expressing a "subjective view, an interpretation, a theory, conjecture, or surmise," rather than claiming to be in possession of "objectively verifiable facts," the statement is not actionable. *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir.1993) (citations omitted).

■■■ In addressing defamatory meaning, "[t]he dispositive question * * * becomes whether a reasonable factfinder could conclude that the statements * * * imply an assertion" that is defamatory. *Milkovich,* 497 U.S. at 21, 110 S.Ct. at 2707. If the statements are not reasonably capable of conveying a defamatory meaning, summary judgment is appropriate.

■■■ The district court made a threshold determination that three alleged statements could reasonably be read to carry a defamatory meaning. The first two statements refer to conflicting information and disagreement:

> [W]hile police say it was self-defense, KARE 11's Dennis Stauffer is live in St. Cloud with conflicting information from neighbors.
>
> * * * A man police say has no history of arrest or mental illness reportedly provoked his own death. But there's some disagreement over exactly what happened. * * *

These statements are part of the full communication that may be considered in determining the defamation claim but do not independently or in context give rise to an assertion that is defamatory. *See* Restatement (Second) of Torts § 563 cmt. d (1977) (the context of a defamatory imputation includes all parts of the communication ordinarily heard or read with it).

The first statement is factually specific in saying that "police say it was self defense" and there is "conflicting information from neighbors." The first part of this statement is true; the second part uses the term "conflicting," which is a subjective evaluation not easily susceptible to being proven true or false. It is also unclear whether the neighbors' information conflicts with other neighbors or with the police. And, significantly, the statement does not reasonably convey a defamatory meaning about Schlieman.

The first sentence of the second statement is an accurate statement; the second sentence indicates only that there is disagreement over what happened. Although the two primary witnesses do not specifically disagree, the statement is not confined to witnesses. A reasonable factfinder could not conclude that the statement implies an assertion that is defamatory.

■■■ The final statement, however, is specific and capable of conveying a defamatory meaning:

> Today friends and neighbors left flowers where Hartwig was killed and declined to speak on camera, but two people say they witnessed the shooting and that Hartwig was not being aggressive.

A jury could reasonably conclude that in context the statement defames Schlieman because it conveys the meaning that the shooting was not justified. Whether the two people, identified as Simpson and Melby, made these statements is susceptible of proof. The court did not err when it denied KARE TV's motion for summary judgment on this statement.

The dissent suggests, as an alternative basis for resolving these issues, that we

find that Schlieman has not presented sufficient proof of actual malice. In other words, Schlieman has not shown that the statement was made with knowledge that it was false or with reckless disregard of truth or falsity. *See Diesen,* 455 N.W.2d at 452–53 (citing *Herbert v. Lando,* 441 U.S. 153, 156–57, 99 S.Ct. 1635, 1638–39, 60 L.Ed.2d 115 (1979)). The dissent correctly states that KARE TV did not make a motion to dismiss on this ground in the district court; neither was this issued argued on appeal. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (reviewing court must generally consider only those issues presented to and decided by district court). The testimony of Simpson and Melby, if believed, is strong affirmative evidence on knowledge of falsity or reckless disregard for whether the statement was false or not. Consequently, the record would not support a dismissal for failure to present evidence on this issue.

## DECISION

The district court's instruction restricted the jury's consideration of context in determining defamatory meaning. Because the instruction is a prejudicial misstatement of the law, we reverse and remand for a new trial. The district court correctly instructed the jury on the of-and-concerning element of a defamation cause of action and properly submitted the defamatory-meaning issue for a jury determination. Although two of the statements could not, as a matter of law, convey a defamatory meaning, we affirm the district court's denial of KARE TV's motion for summary judgment on the third statement made in KARE TV's newscast. We therefore remand this case to the district court for a new trial on that statement.

**Affirmed in part, reversed in part, and remanded.**

KALITOWSKI, Judge (concurring in part, dissenting in part)

Because both the law and the evidence presented to the jury support the jury's determination that all three of the statements at issue were not defamatory, I respectfully dissent from that part of the majority opinion that concludes appellant is entitled to a new trial.

### I.

I concur with the conclusion that the first two alleged defamatory statements are not reasonably capable of conveying a defamatory meaning. But I also conclude that in the context of the entire broadcast, as a matter of law, the third statement is also not capable of defamatory meaning. *See Jadwin v. Minneapolis Star & Tribune Co.,* 390 N.W.2d 437, 443 (Minn.App. 1986) ("The defamatory character of any particular statement must be construed in the context of the article as a whole." (citation omitted)).

Importantly, the majority of the broadcast at issue reported the official police version that the shooting was justified self-defense. The three alleged defamatory statements constituted a small part of the broadcast and at most permissibly raised questions concerning police accounts of a fatal shooting. *See Chapin v. Knight-Ridder, Inc.,* 993 F.2d 1087, 1093–94 (4th Cir. 1993) (public officials must tolerate scrutiny of their activities). Moreover, the third alleged defamatory sentence was preceded by a police captain explaining why the officer had to shoot, and was immediately followed by (1) the reporter stating, "Police say that's not what witnesses told them"; (2) a quote by the Chief of Police that "[t]here was no discrepancy in those [witnesses'] accounts last night"; and (3) a statement by the reporter concluding the broadcast by stating that "Chief O'Keefe says, based on what he knows at this point,

he is comfortable with Officer Schlieman's actions." Because this case involves a media defendant inquiring into the conduct of a public official, the First Amendment mandates that the press be given "breathing space" essential to its exercise of freedoms of speech and press. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). Thus, I conclude that in the context of the entire broadcast respondents' statements are not capable of defamatory meaning.

In addition, because this case involves a public official and a media defendant, appellant was required to establish actual malice to prevail on his defamation claim. Although this issue was not presented to the district court, whether evidence in the record "is sufficient to support a finding of actual malice is a question of law [based] on the unique character of the interest protected by the actual malice standard." *Diesen v. Hessburg*, 455 N.W.2d 446, 453–54 (Minn.1990) (quotation omitted).

Here, the record indicates that: (1) the majority of the broadcast at issue presented appellant's version of the events; (2) the reporter testified at trial that an eyewitness told him "specifically that Kevin wasn't being aggressive"; (3) a second employee of respondent testified at trial that the same eyewitness said "the victim was just standing there in a non-aggressive manner when the officer shot him"; and (4) the reporter testified that he had not intended to accuse appellant of any wrongdoing and respondent's executive producer testified that respondent knew how to make such an accusation if that had been its intention. On this record, I conclude that as a matter of law no jury could find that appellant has met his burden of proving actual malice. Since appellant has had his day in court, in the interest of judicial economy, he should not be granted another trial.

## II.

In addition to affirming the district court's denial of appellant's motion for a new trial as a matter of law, I would also affirm the district court because: (1) the instruction regarding defamation by implication was not reversible error; and (2) there was substantial evidence to support the jury's verdict that the statements at issue were not defamatory.

Regarding the allegedly erroneous jury instruction, it is important to note first that there was no evidence that the jury was confused or improperly influenced by the instruction on defamation by implication. Moreover, although appellant argued that the instruction was unnecessary and should not be given, appellant requested that if the instruction were given: (1) it should be based on the language of CIVJIG 50–10; and (2) the instruction should be given immediately after the court gave the jury the definition of defamatory communication. Thus, appellant specifically asked the district court to take the actions that the majority concludes constituted reversible error. *See State v. Adams*, 251 Minn. 521, 548, 89 N.W.2d 661, 679 (1957) (stating a party cannot complain of errors that the party sought or helped create) (On Rehearing).

I would also affirm the district court's denial of appellant's motion for a new trial because there is substantial evidence to support the jury's verdict. The jury was presented with the broadcast and a transcript of the broadcast. Thus, as discussed above, the jury could observe that the majority of the broadcast reported the police version of events and only a few lines reported that there was conflicting information as to whether the victim was aggressive. The jury also heard the testimony of respondent's employees regarding both their efforts to reconcile what they

considered to be conflicting information and their intent in airing the broadcast. Finally, the jury was properly instructed concerning the definition of a defamatory communication and was therefore able to assess the minimal evidence appellant presented establishing the necessary element that the communication must have either harmed his reputation in the community, injured his character, or subjected him to ridicule, contempt, or distrust.

A jury verdict will only be disturbed if it is manifestly and palpably contrary to the evidence. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256 (Minn.1980). Here, because the evidence at trial overwhelmingly supports the jury's verdict, I would affirm the district court's denial of appellant's motion for a new trial.